# Richmond.

## PAGE v. BELVIN & ALS.

### April 7th, 1892.

1. MUNICIPAL CORPORATIONS—*Streets—Fee in.*—The owners of lots abutting on the streets own the fee in those streets, subject to the lawful use thereof by the city. *Hodges* v. *S. & R. R. R. Co., ante,* p. 653.
2. IDEM—*Exercise of functions.*—The exercise of chartered functions in a mode different from that prescribed is a want of power on the subject.
3. IDEM—*Grade of streets—Ratification.*— Changes in grade of streets can be made only by authority of city council previously given, and changes made therein without such authority cannot be validated by subsequent ratification.
4. IDEM—*Abutting owners.*—At all events, rights of action accrued to abutting owners by reason of such change of grade cannot be divested by a sub-sequent validating ordinance.
5. IDEM—*Records—Parol evidence—Case at bar.*—These public bodies do what their recorded acts show, and parol testimony is not admissible to impeach such records. And in action of trespass for changing grade, where the recorded resolution of committee on streets, their report to the common council, and the resolution of the council thereon, referred only to relaying gutters in the street in question;

HELD:

    Improper to admit testimony of members of the council to show that the council in fact did order the grade of the street to be changed.

Error to judgment of circuit court of Richmond city, rendered November 10th, 1890, in an action of trespass, wherein the plaintiff in error, Legh R. Page, was complainant, and Preston Belvin and others and W. E. Cutshaw and others were defendants. Opinion states the case.

*Pegram & Stringfellow* and *Staples & Munford*, for plaintiff in error.

*C. V. Meredith*, for defendants in error.

LACY, J., delivered the opinion of the court.

This action is trespass by the plaintiff in error, a resident of Richmond city, against the defendants in error, who are members of the committee on streets of the city council, the city engineer, and two contractors for the work, for an alleged trespass committed by them on his lot on Grace street, in Richmond city, in digging up the sidewalk and street contiguous to his residence, and lowering the grade of the street, and causing him great annoyance and damage. The action is brought against these gentlemen as individuals—not as officers of the city government—upon the ground that they committed the acts complained of without being previously authorized by the city council, in which body the city charter vested whatever authority there was to the end attained. And these defendants concede that, in strictness of law, they did not have authority to do this work, but they say they did it in the usual way streets were graded, and reported their action to the city council, when it was ratified. They say, also, that they supposed the plan usually adopted was lawful. The matter was set in motion by a petition signed by the plaintiff (Page) and the other residents on both sides of Grace street between Fifth and Sixth streets, addressed to the committee on streets, asking to have the cobble-stone gutters taken up, and replaced with granite gutters, the "present gutters being very rough and out of grade." The committee on streets, with its clerk and the city engineer, went to the spot, in response to the petition of the property-holders, and, after examination, resolved : "Re-lay gutters Grace, Fifth to Sixth (both sides); spalls. Stratton : rec'd. Have done if app'd by com. and eng'r " ;

which, being interpreted, meant that the committee would recommend to the council that the prayer of the petition of the property-holders be granted, if approved by the ward committee and the city engineer. And so subsequently, upon the recommendation of the committee on streets, the council resolved "that the sum of $575 be and the same is hereby appropriated from the street fund to pave granite gutters on both sides of Grace street from Fifth to Sixth street."

Without other authority than this the defendants went in this street, at the place indicated, and changed the grade of the whole street, and lowered the street nearly three feet, at a cost to the city of $1,694.56, instead of $575 to repair the gutters, and damaged the plaintiff in the sum of $1,250, which was expended necessarily to remodel the entrance to his house to adapt it to the changed grade of the street.

It appeared in evidence that the defendant (Belvin) went to see the plaintiff (Page) to give him notice about what he and others were about to do in front of his house, but Mr. Page, who is a prominent lawyer in this city, was very busy, and postponed any interview on the subject at that time, and promised to call on Mr. Belvin at his place of business, which Mr. Page did do several times, but it so happened, from various causes not necessary to detail, that they did not meet until the work was well under way, and the pavement pulled up, both having at different times left the city.

The plaintiff went around among the denizens of that quarter to see what could be done to stop this digging and grading, the plaintiff having in the past been city attorney, and some of the other residents being at the time in the city legislature. But nothing could be done to stop the work, and the plaintiff brought his suit for damages.

At the trial there was no dispute about the facts, and the plaintiff and the defendants asked instructions, but the court refused all of the instructions except one offered by the defendants, as follows :

" The court instructs the jury that the council of the city of Richmond had the power to authorize the cutting down or grading of the street in front of the plaintiff's lot as it was done by the city engineer, under the order of the committee on streets, and that as the said council did, by the resolution of May 15th, 1890 (offered in evidence), ratify all acts and works done in such cutting down or grading, the plaintiff is not entitled to recover of the defendants, and the jury must find for the defendants," which the jury did.

The plaintiff moved the court to set aside the verdict of the jury and grant him a new trial, but the court overruled this motion, and refused to set aside the said verdict, but rendered judgment thereon in favor of the defendants; whereupon the plaintiff applied for and obtained a writ of error to this court.

It is conceded that by the charter of the city of Richmond and the by-laws of the city the committee on streets and the city engineer were without authority to change the grade of this street without the direction of the common council, and that in this case there was no such authority given. But the defendants in error insist—first, that the subsequent ratification of the city council of the acts in question made these acts the acts of the city council, and that the city council had authority under the charter to do the acts in question; and, secondly, that the plaintiff had no right to sue for the alleged trespass, because the streets in fee belonged to the city, and not to him.

The plaintiff assigns as error the action of the circuit court in giving the instruction given to the jury and in the admission of certain evidence, and in refusing to set aside the verdict.

Upon the question of the ownership of the fee in the streets the defendants asked the court to instruct the jury that the fee was in the city of Richmond, or if not in the city of Richmond, then in the heirs of William Bird, by whom this street was laid off and dedicated to the public as a street at the foundation of the city.

The court very properly refused either of these instructions, but the court should have properly instructed the jury upon this point, in accordance with the well-settled law of this state, that the fee in the street, subject to the city's lawful use of the street, was in the plaintiff.

This question was a good deal discussed at the hearing in this court. But it cannot be considered any longer open for discussion by the court. In the recent case of the *Western Union Telegraph Company* v. *Williams*, 86 Va. 700, this question was elaborately discussed, and the cases in this court upon the question cited to which we refer, and also in the still more recent case of *Hodges* v. *S. & R. R. R.*, *ante*, p. 653, and which was twice heard here, and ably and fully argued at each hearing, and which decided this question in accordance with the cases in this court which had gone before, and we refer to the decision of that case and the cases cited in the opinions filed at each hearing upon this question; and we do not consider that it can be profitable to again discuss the subject.

It being settled, then, that the streets belonged to the plaintiff, whose lot abutted thereon, subject to its legitimate use by the city; and it being also settled that under the charter, the city being authorized to dig down and carry away the ground only by its common council, and that the defendants did the acts complained of without authority of the city council first obtained, we reach the next and last question to be considered— to-wit, What was the effect of the subsequent ratification by the council of these unauthorized and illegal acts?

In this case this question is divisible—(1) Grant the power to ratify, and (2) it was so ratified in this case after suit brought. If the right of action existed at the time the ordinance of ratification was enacted, could the passage of the ordinance destroy it?

As to the question of ratification generally, " it may be said a municipal corporation may ratify the unauthorized acts and contracts of its agents or officers which are within the corpo-

rate powers, and not otherwise." It may be granted that the council, in this case, might have done the act in question, or caused it to be done; but under their charter, they could not have done it in the manner in which it was done. It was done without resolution or ordinance previously enacted, and this the council could not have done, any more than the committee and the engineer.

We are referred to numerous cases by the counsel for the plaintiff in error which hold that, although the power be granted, yet it must be exercised in the prescribed mode. The council can act only by previously enacted ordinances. *Cross* v. *Norristown*, 3 C. E. Green, opinion of Beaseley, C. J.; *Zortman* v. *San Francisco*, 20 Cal. 102, opinion of C. J. Field.·

In a case which turned upon a valid ratification or not, it is said : " The rule is general, and applies to the corporate authorities of all municipal bodies, when the mode in which their power on any given subject can be exercised is prescribed in their charter, *that mode* must be followed. The mode in such cases constitutes the measure of the power. * * * Aside from the mode designated, there is a want of all power on the subject. This is too obvious to require argument, and so are all of the adjudications." *Smith* v. *Stearns*, 10 Wall. 326; *Hyder* v. *Joyer*, 4 Bush. 405; *Ruggles* v. *Collier*, 43 Mo. 367; *Mayor* v. *Porter*, 18 Md. 301; *Thompson* v. *Boonville*, 61 Mo. 326. It is clear that the city council was without the power to validate the unauthorized acts in question. But (2) the right of the plaintiff to redress having vested upon the doing of the acts in question, his right of action cannot be taken away by the city council, while the right to a particular remedy is not a vested right, and may be taken away by competent authority. But a vested right of action, says Mr. Cooley (Cooley Con. Lim. 361), is property in the same sense in which tangible things are property, and is equally protected against arbitrary interference. The legislature cannot confiscate property nor rights, *a fortiori* the council has no such power. The right of

action arose upon the committing of the alleged acts, if at all, and the rights of the plaintiff therein must be, and can only be, decided in tribunals established for the purpose of deciding controversies between man and man—the courts of justice.

It is also assigned as error by the plaintiff in error that the court allowed evidence to be offered before the jury tending to show that while the recorded resolution of the Committee on Streets, and the report to the common council, and the resolution of the common council refer only to the relaying of the gutters, as asked by the property-holders, yet the real action of the bodies in question are different, and that they did really order the grade of the street to be changed. This evidence was inadmissible and incompetent. These public bodies do what their acts show, and the testimony of the members cannot be received to impeach their recorded acts in this way. If the ordinance was not such as the body passed, to repeal, amend, and re-enact are all the remedies, and they are ample for the ends of justice.

The instruction given by the court to the jury is erroneous for reasons already stated, and what has been said shows sufficiently what instructions should be given by the court at the next trial should the evidence be the same.

And having disposed of all the questions raised in the record, we are of opinion to reverse the judgment of the circuit court of Richmond city and remand the case for a new trial to be had therein in accordance with this opinion.

JUDGMENT REVERSED.