**Richmond.**

MᶜCROWELL v. CITY OF BRISTOL ET AL.

February 16th, 1893.

1. CHARTER AND ORDINANCES—*Construction.*—The provision of the charter of the city of Bristol, authorizing sidewalks and gutters along any street to be paved or improved at cost of abutting owners, does not authorize the city to impose by ordinance, upon such owners, the burden of paving the entire width of the street in front of their respective properties.   Charter, § 24.

2. IDEM—*Delegation of powers.*—Under the provision of the charter authorizing the council to prescribe the width of the sidewalks, such power cannot be delegated to the street committee and city engineer.

3. LOCAL ASSESSMENTS.—*Levy.*—The provision of the charter authorizing such local assessments, if valid, can be charged only upon the abutting property, and cannot be levied on the personal property of the abutting owners.

4. CONSTITUTION—*Local assessments.*—*Quære :*   Whether or not, under the Constitution of Virginia, the legislature had the power to confer upon the council of the city of Bristol the authority to levy and collect local assessments, as provided by § 24 of its charter ?   *City of Norfolk* v. *Chamberlain, ante* p. 196.

Appeal from decree of corporation court of city of Bristol, rendered at April term, 1892, in a cause wherein John McCrowell was complainant and the City of Bristol and J. L. C. Smith, treasurer, were defendants.   The decree being adverse to plaintiff, he appealed.

The object of the suit was to perpetually enjoin and restrain said city and its said treasurer from collecting the amount of a certain local assessment levied by said city as and for the cost of a granolithic sidewalk pavement constructed and laid along the front of said McCrowell's property, on Main street, in said city of Bristol.

The material facts, so far as they can be collected from a wretchedly made-up record, are these :

Prior to and at the time of laying the pavement in question, the appellant was the owner of two lots, fronting 198 feet on Main street, in the city of Bristol ; and, in the year 1889, prior to the improvement and assessment in question, he had, at his own expense, laid a pavement eight feet in width along the entire front of his said property, a part of which was of dressed stone and the residue of a composition known as concrete.

Some time in the year 1890 (precisely when does not appear) the city of Bristol entered into a contract with the Miller Paving Company for laying a granolithic pavement or sidewalk along said Main street, from Virginia street to Scranton street, which space includes the said property of the appellant. Subsequent to said contract, and during the said year of 1890, said Miller Paving Company, acting under the supervision and direction of the city engineer and street committee of said city of Bristol, tore up, destroyed, and hauled away the pavement constructed by the appellant at his own expense as aforesaid, and laid along the front of appellant's said property a granolithic pavement or sidewalk, *ten feet wide*, at a cost of $394, the whole of which, it is claimed by said city, was regularly and rightfully assessed against the appellant, and is, by virtue of the charter and certain ordinances passed by the council of said city, collectable as other taxes are collected by said city.

Later the treasurer of said city presented to the appellant for payment tax tickets for two thirds of said assessment, the amount thereof claimed by said city to be then due ; but the appellant, denying the validity of the charge against him, refused to pay the same ; and thereupon said J. L. C. Smith, treasurer of said city, levied upon a certain sixteen horsepower engine, the property of the appellant, but not then, nor

at any time, upon either of the said lots of appellant, in front of which said granolithic pavement was laid. The said treasurer having levied upon said engine for the purpose of subjecting the same to sale for the payment of said tax tickets, the appellant presented his bill, setting forth substantially the facts above stated, and, denying on several grounds the validity of said assessment, prayed for an injunction restraining said city of Bristol and said J. L. C. Smith, treasurer, from proceeding to sell said steam engine, and from enforcing the collection of said taxes. And on the 6th day of February, 1892, the injunction was awarded according to the prayer of the bill.

The city of Bristol answered, denying every material allegation of the bill touching the alleged irregularity and invalidity of the assessment in question, and insisting that the same was made in strict accordance with the charter and ordinances of said city, and is, therefore, in every respect, regular, valid, and binding.

The defendant, J. L. C. Smith, treasurer as aforesaid, also answered, admitting that he, as treasurer of said city, made the levy upon the property, as set forth in the bill, for the purpose of satisfying tax tickets in his hands amounting to the sum of $262.66⅔, that being the sum then due on said assessment under ordinances of the city. In other respects his answer is wholly immaterial.

The cause, having been matured, was, on the 9th day of April, 1892, brought on and heard upon the bill of the complainant, the answers of the defendants, exhibits filed, and general replication to said answers, and on the motion of the defendants, by counsel, to dissolve the injunction theretofore awarded in the cause, when a decree was rendered therein, dissolving said injunction and dismissing the complainant's bill; and from that decree the case is here on appeal.

*Fulkerson, Page & Hurt* and *D. F. Bailey*, for appellant.

*W. S. Hamilton*, for appellees.

RICHARDSON, J., (after stating the case,) delivered the opinion of the court.

Disregarding the appellant's specific assignments of error, the case may be considered and disposed of under the one general head : Was the alleged local assessment, for the cost of the granolithic pavement in front of appellant's property, made in pursuance of authority conferred by the charter of said city, and valid ordinances passed in pursuance thereof?

The plaintiff (appellant here) charges in his bill that whilst, under the 24th section of the charter of said city, the council thereof was authorized "to have the sidewalks and gutters along any street within said city, such width as they may prescribe, properly paved or otherwise improved, repaired, and altered, at the proper cost and expense of the owners of the lands or lots along the fronts or sides of which such sidewalks or improvements may extend, and to levy and collect such local assessments on each of such lots or pieces of lands as may be necessary to pay for said improvements, said assessments to be collected in the same manner as other taxes are collected," yet that said council has never, by ordinance or ordinances, made any provision for carrying out said provision of the charter, and has never prescribed the width of such sidewalks or of the gutters, but, on the contrary, delegated the whole matter to the city engineer and street committee of said city.

The city of Bristol, in its answer, denies the allegation in the bill that no ordinances have been passed by the council of the city, carrying out said provision of the charter, and alleges that such ordinances have been passed, and, with its answer, exhibits certified copies of three ordinances, as follows :

1st. An ordinance passed by said council on the 5th day of August, 1890, as follows :

" *Resolved*, That the city of Bristol, Va., grade Main street from Virginia to Scranton streets, and lay sewer on the same, and require the property-owners to lay or pay for a granolithic pavement on same, in front of their respective properties, between Virginia and Scranton streets, under the directions and supervisions of the street committee."

2d. An ordinance passed on the 14th day of October, 1890, in these words :

" *Be it ordained by the council for the city of Bristol, Va.*, That all persons in front of whose property granolithic pavements have been or may be laid, as heretofore provided by ordinance, shall pay for the same in three equal instalments— one third in the year in which the same is completed and accepted by the street committee, and the balance in one and two years, in equal instalments ; *provided*, that any·such person who may pay for the same within thirty days from completion as aforesaid, or from the time persons are notified of the same, shall be entitled to a discount of ten *per cent.* on same.    And any such sums as may be due as aforesaid shall be collected in the same manner as taxes are collected for said city."

3d. An ordinance passed on the 19th day of October, 1891, as follows :

" Section 1. *Be it ordained by the council for the city of Bristol, Va.*, That all persons along whose property the city has or may lay down granolithic pavements, whether on the fronts or sides of the same, are hereby required to pay the actual costs and expenses of same to said city, except the costs and expenses of grading for said pavements and the sewer, which shall be paid by the city.    And each of the said persons are required to pay for said pavement along his property on the following terms—to-wit, one third in the year in which said pavements are constructed ; the balance in two equal instalments of one and two years, respectively, from the com-

pletion of said pavement, with interest from date of said completion; *provided,* any person who desires to pay all of said costs and expenses of the pavement along his property as aforesaid, within thirty days from the completion of the same, shall have the benefit of ten *per cent.* discount of the total amount.

" Section 2. The city engineer or surveyor shall furnish to the street committee, with a plan of the street on which the pavement in the preceding section has been or may be laid, the squares, number of feet on said pavement along each lot, and the names of the owners thereof. From this plan bills of assessment of the costs and expenses (as provided in preceding section) of the pavement to the owner of each lot shall be made out by the commissioner of the revenue, and delivered by him to the treasurer for collection. The said assessments, as the amounts fall due, or any part thereof, under the preceding section, shall be collected in the same manner as other taxes are collected.

" Section 3. This ordinance shall be in force from its passage."

These are the ordinances relied upon in the answer of the city of Bristol to repel the charge in the bill that no ordinance or ordinances had ever been passed by the council of said city to carry out the provision contained in said 24th section of the city charter, with respect to sidewalks and gutters, and to sustain the averment in said answer that such ordinances had been passed.

The first of these so-called ordinances is but a simple resolution of the council of said city, and its language is explicit and its meaning clear; and, for the purposes of this case, its defect is, that it plainly transcends the power and authority conferred by the charter. But, when considered together, these ordinances are, to say the least, peculiar; and in respect to them it may be said that, if uncertainty of expression and

obscurity of meaning had been the object in view, the council of the city of Bristol could hardly have framed ordinances more rambling, incoherent, and unintelligible than, in most respects, are the three ordinances here in question, nor ordinances less calculated to establish the validity of the assessment in question. But, notwithstanding all this, it is clear, beyond all question, that, whether viewed singly or together, there is not to be found the slightest manifestation of any purpose on the part of the city council to *prescribe the width* of the sidewalk in question, or of any sidewalk on Main street in said city, or elsewhere, or even to restrict the cost and expense to be borne by the abutting owners, respectively, to sidewalks, or to sidewalks and gutters, as provided by the city charter. This will readily appear by a comparison of the powers and authority conferred by the charter with those attempted to be exercised by said city in virtue of the ordinances aforesaid.

The 24th section of the city charter—the only section in respect to streets and street improvements—is as follows :

" The council shall have power and authority, whenever they deem it expedient, to establish new streets, to extend and alter any street that has been, or may hereafter be, established ; to have the sidewalks and gutters along any street within said city, such width as they may prescribe, properly paved or otherwise improved, repaired, and altered, at the proper cost and expense of the owners of the lands or lots along the fronts or sides of which such sidewalks or improvements may extend, and to levy and collect such local assessments on each of such lots or pieces of land as may be necessary to pay for said improvements, said assessments to be collected in the same manner as other taxes are collected."

By the first clause of this section of. the charter power and authority is conferred upon the council, when it shall deem it expedient to do so, " to establish new streets, to extend and alter any street that has been, or may hereafter be, established."

By this clause no power and authority is conferred upon the council to levy and collect local assessments to defray the cost and expense of the improvements therein mentioned, and any such assessment would be held illegal and void for want of such power and authority. But, having conferred by said first clause the power and authority to establish new streets, and to extend and alter any street that has been, or may hereafter be, established, the said 24th section of the charter, by the second clause thereof, proceeds, after a semi-colon, to confer separate and distinct power and authority upon said council in respect to sidewalks and gutters—that is, "to have the sidewalks and gutters along any street within said city, such width as they may prescribe, properly paved or otherwise improved, repaired, and altered, at the proper cost and expense of the owners of the lands or lots along the fronts or sides of which such sidewalks or improvements may extend, and to levy and collect such local assessments on each of such lots or pieces of land as may be necessary to pay for said improvements," &c.

Obviously, this second clause of said 24th section of the charter is confined to sidewalks and gutters, and, in unmistakable terms, confers upon the council of said city power and authority to prescribe the width of sidewalks and gutters along any street within said city, and to have such sidewalks and gutters properly paved, repaired, altered, or otherwise improved, at the cost of the abutting owners, and to levy and collect such local assessments on each of such lots or pieces of land as may be necessary to pay for such improvements.

By this clause, which plainly limits and restricts the power of the council, as respects levying and collecting local assessments, to paving or otherwise improving sidewalks and gutters, no power or authority is conferred upon the council to levy and collect local assessments for the construction of the improvements mentioned in the first clause of said section of

the charter, and any attempt to exercise such power is illegal and void for want of authority. Yet, by the first of the ordinances in question—that passed on the 5th of August, 1890— the council of the city of Bristol plainly transcended the power and authority conferred by the charter, in at least three important particulars :

1st. The charter authorizes local assessments only in respect to sidewalks and gutters; but the ordinance requires " the property-owners to lay or pay for " a *pavement on Main street*, in front of their respective properties, between Virginia and Scranton streets, the term " sidewalks " not being mentioned in the ordinance. That this ordinance or resolution of the council plainly requires the abutting owners, if, anybody, to lay or pay for a granolithic pavement on Main street, and not on a sidewalk or gutter along that street, cannot for a moment be questioned. Here is the language of the ordinance itself :

" *Resolved,* That the city of Bristol, Va., grade Main street from Virginia to Scranton streets and lay sewer on the same, and require the property-owners to lay or pay for a granolithic pavement on same, in front of their respective properties, between Virginia and Scranton streets, under the directions and supervisions of the street committee."

It is conceded that the improvement for which the pretended assessment in question was made was of a sidewalk on Main street, in the city of Bristol ; but it must be borne in mind that the question is not whether the said council had authority to pass a valid ordinance for such an improvement, and to levy and collect local assessments to defray the expenses thereof, but whether, under the ordinance in question, the assessment is valid. In other words, the question is, Does the provision of the charter authorizing sidewalks and gutters, along any street in said city, to be paved or otherwise improved, at the cost of the abutting owners, also authorize

the council of said city to impose, by ordinance, upon such owners, the enormous burden of paving the entire width of a street in front of their respective properties? It is quite plain that if this ordinance be valid and binding, then, under it, the council of said city can go on and pave the entire width of the street, and assess the abutting owners with the cost and expense thereof. No such power is conferred by the charter, either expressly or by necessary implication.

"It is important to bear in mind that the authority to municipalities to impose burdens of any character upon persons or property is wholly statutory, and, as its exercise may result in a divestiture and transfer of property, it must be clearly given and strictly pursued. This rule applies * * * to proceedings by municipal corporations under the delegated right of eminent domain, and it extends equally to proceedings under the taxing power, including special assessments for local improvements." 2 Dil. on Mun. Corp., § 763. And the learned author elsewhere says: "It is a principle universally declared and admitted that municipal corporations can levy no taxes, general or special, upon the inhabitants or their property, unless the *power* be plainly and unmistakably conferred." And in a note the author quotes with approval the language of Lumpkin, J., in *Savannah* v. *Hartridge*, 8 Ga. 23–26, as follows: "The burden is upon the corporation to show the grant [to lay taxes] by express words or necessary implication; for otherwise it cannot be justified in the exercise of this high prerogative of sovereignty"; of Lawrence, J., in *Scammon* v. *Chicago*, 40 Ill. 146, as follows: "The law [authorizing local assessments] must be strictly followed as to all its substantial requirements"; and of Stuart, J., in *Kyle* v. *Malin*, (relating to power to tax for local improvement,) as follows: "Possessing, as these municipal corporations do, the power of assessment and sale of private property, often wielded by the indiscreet and selfish,

the grossest abuses would inevitably follow, if they were not held strictly within the powers granted and the means prescribed for the execution of these powers."

In no just sense can it be said that an ordinance of a city council, authorizing local assessments to defray the expenses of paving a *street*, is clearly within the power conferred by the charter of such city to pave or otherwise improve sidewalks and gutters, and to levy and collect local assessments to pay for such improvements.   It is true that a sidewalk along a public street is part of the street, and by a somewhat strained construction it might be said that a requirement to pave a street would include the sidewalks; but the converse of the proposition is by no means true, as the sidewalk, in no possible sense, can be said to include the street proper.

It may be said that granolithic pavement is only adapted to sidewalks, and not to streets at large, and that, as granolithic pavement is prescribed by the ordinance, by fair intendment, the ordinance ought to be construed as meaning sidewalk pavement, and not street pavement.   But any such interpretation would be not only unauthorized, but directly opposed to the express language of the ordinance itself.   Moreover, the charter confers upon the city council authority to have the sidewalks and gutters paved, repaired, altered, or otherwise improved, but prescribes no particular kind of pavement; and if the ordinance under consideration be valid, then, under it, or a similar ordinance, prescribing the kind of pavement to be laid, the city council can at will proceed to pave, not only Main street, through its entire width, but any and all other streets in said city, and to assess the entire expense upon the property of the abutting owners.   The citizen should never be exposed to such peril; and, in the light of the principles above laid down, he cannot be so exposed.   Hence, nothing short of the rule of strict construction—a rule repeatedly applied by this court—can serve to restrain the rapacity of

municipal and other corporations. Therefore, in·*Orange & Alexandria Railroad Company* ·v. *Alexandria Council,* 17 Gratt. 176, Judge Joynes said : "It is undoubtedly true, as held by this court in *Richmond* v. *Daniel,* 14 Gratt. 387, that laws conferring the power of taxation upon a municipal corporation are to be construed strictly." And to the same effect are numerous other decisions of this court.

2d. The assessment in question is clearly invalid in that the city council, instead of first prescribing the width of the sidewalk in question, as provided by the 24th section of the city charter, delegated, or rather left, the whole matter to the city engineer and street committee, and in doing so transcended the power and authority conferred by the city charter, which unauthorized assumption of authority rendered the action of said council, and all acts done in pursuance thereof, illegal and void. In this connection it is important to refer to the other two ordinances of said council, relied on by the city of Bristol to show the regularity and validity of the assessment in question. In doing this, it is well to bear in mind that the first of the series of ordinances on the subject—that of August 5th, 1890, and already considered—makes no mention whatever of any sidewalk, and, of course, does not prescribe the width of any .such improvement. Is this defect cured by either or both of the ordinances subsequently passed ? It certainly is not. The first of them—that passed on the 14th of October, 1890—simply declares : "That all persons in front of whose property granolithic pavements have been or may be laid, as heretofore provided by ordinance, shall pay for the same in three equal instalments—one third in the year in which the same is completed and accepted by the street committee, and the balance in one and two years, in equal instalments ; *provided,* that any such person who may pay for the same within thirty days from completion as aforesaid, or from the time persons are notified of the same, shall be entitled to

a discount of 10 *per cent.* on same.   And any such sums as may be due as aforesaid shall be collected in the same manner as taxes are collected for said city."

The city of Bristol can derive no comfort from this ordinance.   It not only does not, in terms, refer to the improvement in question, or in any way identify itself with any improvement on or along any part of Main street, in the city of Bristol, but entirely omits any mention of a sidewalk, or of sidewalks, either on or along said Main street or elsewhere in said city.   And it certainly does not even intimate any purpose to prescribe the width of any sidewalk.

The next and last of these ordinances—that passed on the 19th of October, 1891—contains three sections, which have been already set forth.   The first clause of the first section of this ordinance declares "that all persons along whose property the said city has or may lay down a granolithic pavement, whether on the fronts or sides of the same, are hereby required to pay the actual costs and expenses of same to said city, except the costs and expenses of grading for said pavements and the sewer, which shall be paid by the city."   This differs from the last preceding ordinance (1) in that, for the first time, payment is expressly required to be made to the city of the actual costs and expenses of granolithic pavements laid down by said city, whether along the fronts or sides of the properties, respectively, of the abutting owners ; and (2) in excepting from the charges against such owners the costs and expenses of grading for said pavements and the sewer, which are made payable by the city.   The balance of the section is substantially the same as the last preceding ordinance.

But this section, like the last preceding ordinance, is general in its scope and meaning, makes no mention of any sidewalk improvement on Main street or elsewhere in said city, and has no application, either express or by necessary implication,

to the improvement in question. Indeed, the reasonable implication is that it was not intended to have any such application, it being conceded that the improvement was a sidewalk along the fronts of the properties of the abutting owners, respectively, whilst the provision in the section of the ordinance under consideration charges upon such abutting owners the actual costs and expenses of granolithic pavements, " whether on the fronts or sides " of such properties, which had theretofore been, or might thereafter be, laid down by said city. If, therefore, this ordinance was passed with especial reference to the sidewalk improvement here involved, which is an improvement along the *fronts* of the abutting properties, respectively, it is difficult to perceive the propriety of the language, " whether on the fronts or sides." Such language would be appropriate in the case of an improvement of a similar character along a cross-street, but not ordinarily so as respects the principal street of a city or town, where lots, and improvements thereon, are supposed to front on such principal street. Clearly there is nothing in this first section of the ordinance passed on the 19th of October, 1891, which in any way sustains the contention, on the part of the city of Bristol, that the assessment in the present case is regular and valid.

The second section of this ordinance is as follows : " The city engineer or surveyor shall furnish to the street committee, with a plan of the street on which the pavements in the preceding section has been or may be laid, the squares, number of feet on said pavement along each lot, and the names of the owners thereof. From this plan bills of assessment of the costs and expenses (as provided in preceding section) of the pavement to the owner of each lot shall be made out by the commissioner of the revenue, and delivered by him to the treasurer for collection. The said assessments, as the amounts fall due, or any part thereof, under the preceding section, shall be collected in the same manner as other taxes are collected."

As to this ordinance of 19th October, 1891, it is proper to say it was passed long after the completion of the work in question, and the preceding illegal and invalid acts of the council could in no way be validated thereby. *Page* v. *Belvin et als.*, 88 Va. 985.

This section, like the preceding one, in no manner prescribes the width of the sidewalk in question, or of any sidewalk along any street within said city or elsewhere. On the contrary, in the most general and indefinite way, it refers to granolithic pavements, whether theretofore or thereafter to be laid, without reference to any particular improvement; and, in the same general way, simply directs the city engineer, street committee, and treasurer to do certain things looking to the collection of local assessments in general. Indeed, there is not to be found in either of the three ordinances any express delegation of authority to the city engineer and street committee, or either of them, or to any other officer or person, to determine the width of the sidewalk for the paving of which the assessment in question is claimed to have been made. That matter seems to have been entirely ignored by the city council, or was left at large, and subject to the arbitrary will and caprice of the city engineer or street committee, or both, as the one or the other, or both, might determine. For, while it is alleged in the bill, and is nowhere denied, that the assessment here involved was for a granolithic pavement on a sidewalk ten feet wide along that part of Main street in front of the appellant's said property, it nowhere appears that the width of such sidewalk was ever prescribed by either the city council, the city engineer, or the street committee. The nearest approach to anything like authority to either the city engineer or the street committee to prescribe the width of said sidewalk is found in the provision in said ordinance of August 5th, 1890, authorizing the work therein required to be done " under the directions and supervisions of the street com-

mittee." But this cannot be successfully invoked as authority, because—first, it does not amount to an express delegation of the power to prescribe the width of such sidewalk; second, the work or improvement therein provided for was for *paving Main street*, and not a sidewalk along that street; and, third, if the language were sufficiently explicit and comprehensive for the purpose, yet the power and authority conferred by the charter upon the city council to prescribe the width of sidewalks is a power which the council had no authority to delegate to any committee, officer, or person.

In that work of indisputable merit (Am. & Eng. Ency. of Law, Vol. XV., pp. 1042–'3) the law is thus concisely and clearly stated : " The general legislative power residing in the state government may delegate to a municipal corporation some portion of its own powers, which are held in subordination to the general power; but these delegated powers, given for local objects, are regarded as trusts confided to the hands in which they are placed, and are not subject to be delegated by the repositories of them. The rule is plain, then, that the legislative powers of a municipal corporation cannot be vicariously exercised." And, in support of the text, as above given, in a note it is said: " In *Oakland* v. *Carpenter*, 13 Cal. 540, it appeared that the board of trustees of the town of Oakland, in whom the legislature had vested large corporate and municipal powers, were authorized ' to lay out, make, open, widen, regulate, and keep in repair all streets, bridges, fences, public places and grounds, wharves, docks, piers, slips, sewers, and alleys, and to authorize the construction of the same.' Under this clause the board, by ordinance, gave defendant exclusive privilege of laying out, establishing, constructing, and regulating wharves, &c., within the city, for thirty-seven years. *Held :* That the ordinance was void, as being a transfer of the corporate powers of the board."

In *State* v. *Bell*, 34 Ohio St. 194, it was held that authority

to grant permission to build a street railroad cannot be delegated by a city council to any officer or board.

In *State* v. *Houser*, 63 Ind. 155, it was held that the duty of the common council of a city to issue, negotiate, and sell bonds was one which they could not delegate or confer upon the city treasurer, or any other officer or person.

In *Thompson* v. *Schermerhorn*, 6 N. Y. 92—9 Barb. (N. Y.) 152—it was held that the statutes authorizing the common council of a city to make an improvement, and prescribe the manner of doing it, could not be delegated to a city officer or committee.

"The principle is a plain one," says Judge Dillon, "that the public powers or trusts devolved by law or charter upon the council or governing body, to be exercised by it when and in such manner as *it* shall judge best, *cannot be delegated to others.* This principle, its scope and limitations, is best shown by examples of its application to actual cases. Thus, where, by charter or statute, local improvements, to be assessed upon the adjacent property-owners, are to be constructed in 'such *manner* as the *common council* shall prescribe by ordinance,' it is not competent for the council to pass an ordinance delegating or leaving to any officer or committee of the corporation the power to determine the mode, manner, or plan of the improvement. Such an ordinance is void, since powers of this kind must   *   *   *   be exercised in strict conformity with the charter or incorporating act." 1 Dil. Mun. Corp., § 96. And in a note the author cites numerous authorities in support of the text; and, among other things, says that where the charter gave the city power to require *streets to be paved,* " in all cases where the *city council* shall deem it necessary," it could not, by ordinance, make the mayor the judge of the necessity for paving. " So, where the city charter gives the *city council* power *to construct sewers* of such 'dimensions as may be prescribed by ordinance,' the

council cannot, by ordinance, require sewers to be constructed of such dimensions as may be deemed requisite by the city engineer"—citing *St. Louis* v. *Clemens,* 43 Mo. 395, and other cases.

These authorities sufficiently exemplify the rule of strict construction universally declared and admitted, and intended to restrict municipal corporations, in the exercise of delegated powers, to the exercise of such powers only as are clearly comprehended in the words of the grant, or derived therefrom by necessary implication. The same authorities illustrate also the important fact that the mere grant to a municipal corporation of the power to make an improvement does not imply or carry with it the power to levy a special assessment upon the abutting property to defray the expense of the improvement.

In the present case the city council widely departed from, and even ignored, the plain terms of the city charter. By the 24th section of that instrument power and authority is conferred upon the council, in language that cannot be misunderstood, "to have the sidewalks and gutters along any street within said city, such width as they may prescribe, properly paved or otherwise improved," &c. The duty thus imposed—to prescribe the width of sidewalks, &c.—was a duty imposed, not upon the street committee or city engineer, but upon the city council, and was an essential pre-requisite, without which there was no authority to do the work, and, of course, there could be no valid local assessment to pay for it.

" To entitle a *municipal corporation* to recover from the abutter the expense of constructing a sidewalk or other local improvement, it *must comply with all conditions precedent,* whether prescribed by charter or ordinance. Therefore, if the order of the city council requires the sidewalk to be built *on the side of* a certain street, the city cannot recover of the

lot-owner an assessment for building a sidewalk several feet from the side of such street; and, where the ordinances of the city provide that sidewalks shall be constructed of such materials as the city council may order, the city cannot recover an assessment unless the council has prescribed the kind of material out of which they should be .built." 2 Dil. Mun. Corp., § 811.

In the present case it is not material to determine whether, by the ordinances aforesaid, it was the intention of the city council to delegate to the city engineer and street committee, or either of them, the power to prescribe the width of the sidewalk here in question, or whether the whole matter was left to them at large, without any special authority. If the former, it was a futile attempt to delegate a power not capable of delegation, and therefore in excess of the authority conferred by the charter; and if the latter, then it was a palpable omission to perform a duty clearly imposed by the charter. And in either event the proceeding was irregular and illegal, by reason whereof the assessment in question is unauthorized and invalid. In other words, there was a clear and fatal departure from the well-settled, just, and reasonable rule that local assessments can only be made where the power to do so is plainly conferred and strictly followed.

The rule of strict construction applied in this case in no way contravenes the manifest right of a municipal corporation to employ agents for the execution of ministerial duties, and so there may be express legislative authority for the delegation of duties other than those strictly ministerial, and not invalid as a delegation of discretionary authority. Hence, in *Hitchcock* v. *Galveston*, 96 U. S. 341, which was cited with approval by Lewis, P., in *Green* v. *Ward*, 82 Va. 324, it was held that if a city council has lawful authority to construct sidewalks, it may direct the mayor and chairman of the committee of streets and alleys to make a contract on behalf

of the city to do the work. In that case Mr. Justice Strong said : " We spend no time in vindicating this proposition. It is true the council could not delegate all the power conferred upon it by the legislature, but, like every other corporation, it could do its ministerial work by agents. Nothing more was done in this case. The council directed the pavements, ordering them to be constructed of one or the other of several materials, but giving to owners of abutting lots the privilege of selecting which, and reserving to the chairman of the committee authority to select, in case the lot-owners failed. The council also directed how the preparatory work should be done. There was, therefore, no unlawful delegation of power."

That case is readily distinguished from the case in hand. There the council directed as to all the substantial preliminaries, and delegated to its agents the performance of ministerial duties only. Here the legislature committed to the judgment and discretion of the city council the important duty of prescribing the width of the sidewalk, and the council attempted to invest the street committee and city engineer with the exercise of that power. This the council had no power to do, by reason whereof the assessment in question was unauthorized, and is invalid and void.

3d. If in other respects the proceedings had been regular and valid, yet there was no authority for the levy on the steam engine in the proceedings mentioned. The property thus levied on was not, and had never been, on the abutting lot of the appellant, and was in no sense a part of such property, or subject to such levy. The assessment, if valid, is, by section 24 of the city charter, expressly made a charge upon the lots of appellant abutting on the improvement. The authority conferred is " to levy and collect such local assessments on each of such lots or pieces of land as may be necessary to pay for said improvements." The authority con-

ferred by said section—*to collect such assessments* " in the same manner as other taxes are collected"—by no means makes such assessments a personal charge upon the lot-owners and their property, of whatever character and wherever found (if within the jurisdiction), liable to levy or distress.

This is made plain by the fifty-fourth and fifty-fifth sections of said city charter, which are as follows :

" 54. All goods and chattels, wheresoever found, may be distrained and sold for taxes assessed and due thereon, and no deed of trust or mortgage upon goods and chattels shall prevent the same from being distrained and sold for taxes assessed against the grantor in such deed."

The assessment in the present case was not of taxes due on any goods and chattels of the appellant, but was an assessment on his lots—his real estate—abutting on the improvement.

Then comes the fifty-fifth section, in respect to subjecting real estate to taxes assessed thereon, which is as follows :

" 55. There shall be a lien on real estate for the city taxes as assessed thereon, from the commencement of the year from which they were assessed. The council may require real estate in the city, delinquent for the non-payment of taxes, to be sold for said taxes, with interest thereon at the rate of ten *per centum,* and such *per centum* as the council may prescribe for charges. Such real estate shall be sold, and may be redeemed in the manner prescribed by law."

These sections are too plain to need explanation. But, independently of them, the point is ruled by the decision of this court in *Green* v. *Ward, supra,* where, in deciding a similar question, which arose under the charter of the city of Alexandria, Lewis, P., says : " In no case, therefore, can such an assessment be held a personal charge, except where plainly permitted by legislative authority; and there is

no such authority in the present case. The 20th section of the charter empowers the collecting officers of the city to distrain for taxes and levies due the city; but its language does not apply to special assessments for street improvements, which are chargeable on real estate only. A similar question arose, and was decided in the same way, in *Neenan* v. *Smith*, 50 Mo. 525.

"It is true that to make an assessment for street improvements a personal charge, and to collect it in the same way that ordinary taxes are collected, would be a more expeditious and, for the city, a more desirable mode of collecting the tax than to enforce the lien of the assessment by a sale of the property. But the question here is one, not of convenience, but of municipal authority; and, since the power contended for has not been granted, it follows that the assessment in question is void."

In the printed notes of argument of counsel the question was discussed whether, under the Constitution of Virginia, the legislature had the power to confer upon the council of the city of Bristol the authority to levy and collect local assessments, as provided by the 24th section of its charter.

The same question was carefully and at length considered, though not decided, in the very recent case of *The City of Norfolk* v. *Chamberlain*, *ante* p. 196. As in that case, so here, it is not absolutely necessary to a proper decision of the case that that question be decided. So, for the purposes of this decision, and conceding, for the sake of the argument, that the power conferred was a legitimate exercise of legislative power, yet it is clear that the power thus conferred was not pursued as the law requires, and that the assessment here involved cannot be sustained. It is not, therefore, to be understood that this court in any respect recedes from the constitutional view of the subject expressed in *City of Norfolk* v. *Chamberlain*, *supra*.

For the reasons above stated, we are clearly of opinion that the assessment in question was levied without authority, and is void, and that the decree of the court below, dissolving the injunction and dismissing the plaintiff's bill, was erroneous, and must be reversed and annulled, and a decree entered here perpetually enjoining the said City of Bristol, J. L. C. Smith, treasurer of said city, and all others, from proceeding in any way to collect said assessment.

DECREE REVERSED.