# Richmond

R. E. EGERTON, SERGEANT OF THE CITY OF HOPEWELL v. CITY OF HOPEWELL.

March 10, 1952.

Record No. 3895.

Present, All the Justices.

The opinion states the case.

*Ligon L. Jones* and *Richard H. Mann,* for the plaintiff in error.

*T. E. Peterson* and *Wm. Earle White,* for the defendant in error.

MILLER, J., delivered the opinion of the court.

R. E. Egerton, Sergeant of the city of Hopewell (hereinafter called defendant) has for some years occupied space in the basement of what is called the Municipal Building wherein he maintains his office. Because of the need of space to accommodate expanding municipal services, the Council of the city of Hopewell directed him to vacate his office and assigned to him office space at the city jail. Defendant refused to relinquish the office that he occupied unless other space was assigned him in the Municipal Building.

The city of Hopewell at the relation of its Mayor and Council instituted this proceeding and asked for an adjudication of its rights and powers in the premises. Its specific purpose was to have the court construe section 15-689, Code of Virginia, 1950, and declare that the City Council has the right and power to require defendant "to vacate and move from the office that he occupies in the basement of the municipal building, to the City Jail of the City of Hopewell."

Defendant asserts that under section 15-689 of the Code of Virginia, 1950, the entire building constitutes the court house, but whether or not it be a courthouse in its entirety, he insists that he is entitled to office space in the building. He also contends that section 15-686 is pertinent to the question presented and shows that this entire structure is the courthouse building. The material parts of these sections follow:

"The board of supervisors of each county or the council of each city shall, if there be offices in the courthouses of the respective counties and cities available for such purposes, provide offices for the treasurer, Commonwealth's attorney, sheriff, commissioner of revenue, commissioner of accounts and division superintendent of schools for such county or city. * * *'' Section 15-689, Code of Virginia, 1950.

"There shall be provided by the board of supervisors of every county and the council for every city a courthouse, clerk's office and jail. * * *'' Section 15-686, Code of Virginia, 1950.

All matters of law and fact were submitted to the judge for decision. He concluded that the building in question was not in its entirety a courthouse but only that part of the second floor appointed for the use of the circuit court which included the court room, judge's chambers, jury and witness rooms, constituted the courthouse, and that there was no space available for use as an office for the Sergeant in that part of the building. He also decided that the Council had the right to control the use and occupancy of the balance of the building even though the building in its entirety constituted a courthouse, and it was still within the reasonable discretion of the City Council to determine whether or not there was an office available therein for the sergeant. From a final order carrying into effect these findings, this appeal was granted.

There is no sheriff of the city of Hopewell. By section 53-168, Code of Virginia, 1950, the sergeant is made keeper of the jail. He performs what would otherwise be the sheriff's duties and is charged with supervision of the jail and safe-keeping of its inmates. It is conceded that he is entitled to the same rights under section 15-689 that he would be entitled to if he did in fact occupy the office of sheriff.

Hopewell was incorporated as a city of the first class in 1916. For the ensuing nine years space for its corporation and circuit courts and clerk's office was leased and provided on the second floor of a building, the first floor of which was occupied by a store. In 1924 the City Council acquired .44 of an acre of land and undertook the construction of a building in which were to be housed the circuit and corporation courts, the clerk's office and other offices. The plans for the building, the construction of which was completed in 1925, designated it as the "Municipal Building for the City of Hopewell, Virginia." Its outside

dimensions as disclosed by the plans are 99 feet x 50 feet, and over its entrance, carved in stone, are words "Municipal Building."

No minutes of the City Council prior to construction of the building disclose the purpose or purposes for which it was erected. However, minutes of the Council of May 19, 1925, contained the following preamble and resolution:

"WHEREAS, the Council of the City of Hopewell devoted considerable time and study to the needs of the Municipal Building, at the time the plans for said building were made, and the rooms were laid out with certain objects in view; and,

"WHEREAS, the three offices in the rear of the court room were designed to be used as a Judge's room, a witness room and a jury room, and office in the Northwest corner (on account of being the largest room and the best office) was assigned to the Judge's office—the remaining rooms to be used as a witness room and a jury room; and

\* \* \* \* \* \*

"NOW, THEREFORE, BE IT RESOLVED by the Council of said City that the Honorable Judge of the Corporation Court be, and he hereby is respectfully requested to occupy the room as outlined above."

D. Lane Elder, who was a member of the City Council when the plans for the building were drafted and construction undertaken, over objection of defendant, testified as follows:

"Q. Just what was the objective of Council in 1924 when they had plans drawn for the erection of the Municipal Building and just how were those plans carried out by having the Municipal Building erected?

\* \* \* \* \* \*

"A. Well, in 1924 the Court House was located over the top of the Woolworth Building at Hopewell and Broadway. We did not have a Municipal Building. At one time it was discussed by Council whether to build a Municipal Building and Court House separately but we found out we didn't have the money to do it, so we decided to build a Municipal Building and apportion a part of it off for the Court House, and we started on it in 1924 and finished in 1925.

"Q. What part of that Municipal Building as erected and completed in 1925 was designated as the Court House?

"A. The part shown as now being occupied by the Circuit Court.

\* \* \* \* \* \*

"Q. What use were they to make of the other two floors, that is, the basement and main floor? I don't mean specific offices. I mean, used for the Court or Court House or municipal functions or just what?

"A. For municipal functions entirely.

\* \* \* \* \* \*

"Q. Who was to exercise the control over that part of the building not appointed to the use of the Court?

"A. It has always been my understanding, City Council.

"Q. Who has exercised that authority from the time the building was built until the present day?

"A. City Council, as far as they could."

In addition to space in this building that was needed and used for stairs, halls, toilets, and storage space for records, supplies, etc., its three floors contained a number of rooms suitable for offices.

We need not enumerate in detail the exact space now allotted to and used by each municipal activity. However, it is appropriate to say that in the basement, in addition to an office 18'6" by 17'2" now occupied by the City Sergeant, space and accommodations are allotted to and used by the Chief of Police, Police Department, city engineer, building inspector, plumbing inspector, sanitary officer and superintendent of streets.

On the first, or main floor of the building are rooms used as offices for the commissioner of revenue, city clerk, city auditor, purchasing agent, city manager, city treasurer, clerk of the circuit court, and their assistants and office forces. A room 18'6" x 12'6" on this floor is also occupied by the local chapter of the American Red Cross.

The major portion of the second floor is partitioned off and used as a court room for the circuit court. This room which is 51'8" x 47'9" was also used by the Corporation Court prior to 1934. It is located at the top of the landing on the second floor and is entered through double doors over which are the words "Circuit Court."

Adjoining the court room proper and used in connection therewith are the circuit judge's chambers, a jury room and a conference room. The latter room, though assigned to and

theretofore used by the circuit court and judge as a conference or witness room, is at present, with the acquiescence of the circuit judge, used by the Selective Service Board.

The City Council chamber, which is 27'5" x 18'6" is also located on this floor. When not in use by the Council, the Civil Court and Juvenile and Domestic Relations Court hold their sessions in this room. On this floor are also located rooms which are used by the Police and Civil Justice Court for office and reception rooms.

This present allotment of rooms and floor space is in substantial accord with what is disclosed by the architect's plans made in 1924. Among the several rooms appearing on the blue print of the second floor is a large room marked "Court Room" and three other rooms bearing the legends "Judge's room", "Jury room", and "Conference room." It thus appears that the space on the second floor now used by the circuit court was then appointed to the use of that and the corporation court.

Since completion of the building in 1925, defendant has occupied an office therein most of the time. However, at the request of the Council, he, on two occasions, moved his office elsewhere for periods of time. In each instance after need for the office space for other purposes ceased to exist, defendant moved his office back to the municipal building.

Within the corporate limits, about seven-eighths of a mile distant from the municipal building is located the city jail. It was erected about 1928. There is sufficient space therein, with necessary accommodations, to serve as an office in which the duties incumbent upon the Sergeant may be conducted.

During the last two years jail breaks have occurred and the escape of prisoners therefrom has been a subject of grand jury investigation. The investigation of that body disclosed that the escapes were "due to inadequate personnel." It, among other things, recommended that two jailors be kept on duty at all times and that "there should be a Chief Jailer and three assistants employed to serve 8 hour shifts." It was following this recommendation and after an examination and report had been made by the Department of Welfare and Institutions of the State of Virginia on the conditions and facilities of the jail that the City Council passed a resolution which directed defendant to move his office from the municipal building to quarters provided at the jail.

Defendant assigns as error the refusal of the court to exclude the testimony of D. Lane Elder, which had to do with the intent and purpose of the Council when the plans were drawn for the municipal building, and the use to which certain parts of the building were put.

He also earnestly asserts that the entire building designated "Municipal Building" is the courthouse. It is then argued that if it be necessary or expedient for him to vacate the specific office that he now occupies due to expanding municipal activities, then the room now used by the Selective Service Board on the second floor, or that used by the Red Cross chapter in the basement, is available for the purposes of his office and must be assigned as such.

To sustain his contention that the testimony complained of was inadmissible, defendant quotes from and cites the following authorities:

"Consequently, official acts of a municipal legislative body can be shown only by its records whenever evidence of those acts is required and they cannot be enlarged or restricted by oral evidence. To permit this would render such records uncertain and unreliable and they would fail to afford any evidence that could be depended upon to show the true proceedings of the municipal body at any of its meetings." 2 McQuillin, *Municipal Corporations*, (2d ed.), sec. 653, p. 637.

"This evidence was inadmissible and incompetent. These public bodies do what their acts show, and the testimony of the members cannot be received to impeach their recorded acts in this way. If the ordinance was not such as the body passed, to repeal, amend and re-enact are all the remedies, and they are ample for the ends of justice." *Page* v. *Belvin*, 88 Va. 985, 991, 14 S. E. 843. Other authorities upon the subject are collected in 32 A.L.R. 1517. See also, *Blankenship* v. *Richmond*, 188 Va. 97, 49 S. E. (2d) 321.

■ Here, however, the testimony admitted does not impeach, vary or enlarge any minutes of the Council, nor does it conflict with any recorded act. It concerned ministerial and administrative functions of the council and does not offend against the principle relied upon. *Moore* v. *Ashton*, 36 Idaho 485, 211 P. 1082; 37 Am. Jur., Municipal Corporations, sec. 182, p. 820. It merely explains and clarifies what the plans of 1924 and the minutes of May 19, 1925, disclosed, *i.e.*, that the courts of

record were intended to and did occupy the space and area on the second floor designated on the plans for their occupancy.

Insofar as this testimony disclosed that the erection of more than one building had been considered but abandoned, and tended to identify area in the building that was in 1924 and 1925 designated for and occupied by certain offices, and what governmental authority actually undertook to and did exercise control over the building or any parts thereof, it had to do with administrative functions and was factual in character and admissible.

Removal of the city jail to the .44 of an acre lot is not sought. Whether or not section 15-686 requires that the courthouse, clerk's office and jail be housed upon the same lot of land, commonly called a courthouse square, is not an issue in this proceeding and we express no opinion thereon.

However, if the jail were in fact located upon the .44 of an acre lot, the same ultimate questions would be presented, i.e.,

1) Is the municipal building in its entirety a courthouse?

2) If not, what part thereof constitutes the courthouse, and

3) Is office space available for the Sergeant in the courthouse, and if so, must it be assigned to him?

The facts and circumstances in evidence sustain the findings of the trial judge. His conclusions set out in part below are, we think, in keeping with a correct interpretation of the statute.

"* * * From the evidence it plainly appears that it was designed, planned and built as a municipal building, that a portion of it was planned for and lawfully appointed to the use of the corporation and circuit courts, that a portion was planned for and lawfully appointed to the use of a clerk's office and that the remainder was designed for and set apart to the use of other governmental functions of the City. * * *

"The court is of opinion that, to all legal intents and purposes, so much of this building as is occupied for the sessions of the circuit court and necessary to the use of such court is the courthouse of the City of Hopewell; that so much thereof as is, or from time to time may be, occupied and used for the clerk's office is the clerk's office of the City of Hopewell and that the remainder thereof is the municipal building of said City and is subject to the administration control of the City Council as to the use and occupancy thereof, not in conflict with the appropriate, orderly and necessary functions of the circuit court."

■ The building in question is not, in its entirety, a courthouse. But that part of the second floor which was planned and appointed for a court room, along with the judge's chambers, conference or witness room, and jury room, with all reasonable means and facilities of ingress and egress, constitutes the courthouse of the city of Hopewell. Determination of whether or not office space is available for the Sergeant within that portion of the building which constitutes the courthouse is, under section 15-689, within the sound discretion of the City Council, and its discretion in that respect may not be set aside and disregarded unless it be abused.

The only room within that part of the building which constitutes the courthouse that defendant contends is available is the one heretofore assigned to the Circuit Court as a conference or witness room but now used by the Selective Service Board.

■ Under the facts and circumstances in evidence, the factual finding and the legal conclusion that this room is not available for use by the Sergeant were justified. Denial of its use to him by the Council does not constitute an abuse of its discretion.

■ We are further of opinion that it is within the right and power of the City Council to control the use and occupancy of that part of the municipal building not appointed to the circuit court, and that it is entitled to assign the use of office space therein as it deems expedient. Having offered to the city sergeant office space and accommodations at the city jail, it was within the power of the Council to order and direct that he vacate the office occupied by him in the basement of the municipal building.

Insofar as the final order and judgment determines that the municipal building is not in its entirety a courthouse, but that the courthouse consists of the space and area in that building as hereinabove designated and described, it is affirmed; and insofar as it holds that no office space is available within the courthouse for occupancy by the Sergeant and that the Council of the city of Hopewell is authorized and empowered to control the use and occupancy of all other parts and area of the building, it is likewise affirmed. But so much of the order and adjudication as indicates that the municipal building may be in its entirety a courthouse, is amended as above set forth; and the order and judgment as thus amended is affirmed.

*Amended and affirmed.*