## CIRCUIT COURT OF AUGUSTA COUNTY

Thomas H. Tullidge

    v.

Board of Supervisors
of Augusta County

By JUDGE THOMAS H. WOOD

August 12, 1988

On August 2, 1988, both of you gentlemen submitted proposed Orders to reflect the ruling of the Court on May 31, 1988. It was apparent to me at that time that there may be some confusion as to the precise ruling the Court made. In order to make the Court's position perfectly clear, it would appear appropriate to issue this short opinion letter.

The plaintiff has filed a proceeding for a Declaratory Judgment requesting the Court to rule, among other things, that the Board of Supervisors of August County cannot relocate the "County Seat" to the Verona complex without a referendum and that the Board of Supervisors cannot relocate County Offices to land not contiguous with their present location without a referendum.

There were a number of factual allegations and legal conclusions contained in the Motion for Judgment. At one point, it is alleged that "County Seat" is synonymous with "Courthouse." (Motion for Judgment, paragraph 10). At another point, it is alleged that the term "County Seat" is that place at which all of the County Offices are to be located. (Motion for Judgment, paragraph 7).

At no point is it alleged that the Board of Supervisors is moving the Circuit Court and related offices to Verona.

Fairly stated, the Motion for Judgment alleges that the Board of Supervisors ultimately will move the Court to Verona.

Based upon the pleadings, the authorities and the views of counsel, it is the ruling of this court that no referendum is required for the Board of Supervisors to move the Treasurer, the Commissioner of the Revenue, its own offices or the "administrative offices" of the County to Verona. It is further the ruling of this Court that the Motion for Judgment does not allege a "controversy" as to whether a referendum is mandatory or permissive with respect to the movement of the Courthouse. Compare *City of Fairfax v. Shanklin*, 205 Va. 227, 125 S.E.2d 773 (1964), with *Fairfax County v. Southland Corp.*, 224 Va. 514, 297 S.E.2d 718 (1982).

March 29, 1989

On March 10, 1988, the plaintiff, Thomas H. Tullidge, an attorney licensed to practice law in the Commonwealth, filed a Motion for Declaratory Judgment praying for the court to declare, among other things, that the Board of Supervisors of Augusta County could not relocate the "county seat" to the Verona complex without approval of the electorate by referendum and that the Board of Supervisors of Augusta County could not relocate County offices to and not contiguous with their present location without approval of the electorate by referendum. In his Motion for Judgment, the plaintiff alleged, insofar as is relevant to this discussion, "that the term 'county seat' as used in this Virginia, means the place designated for doing the County business--a place at which the public buildings are to be erected, where the Circuit and County Courts are to be held and the County offices located, and where the Board of Supervisors are to hold their sessions. The county seat does not necessarily mean the same thing as 'seat of justice,' or the place of the holding of the Circuit Court"; that "county seat" and "courthouse" are synonymous and that the county seat could not be moved without a referendum. The defendant, the Board of Supervisors, demurred to this Motion for Judgment. After considering the pleadings and the Memoranda filed by the parties,

the Court sustained the Demurrer for the reasons stated in an opinion letter dated August 12, 1988.

At that time, the Court ruled that no referendum is required for the Board to move the Treasurer, Commissioner of the Revenue, its own offices or the "administrative offices" of the County to Verona. The Court further ruled that the Motion for Judgment did not allege a "controversy" as to whether a referendum is mandatory or permissive with respect to movement of the Courthouse. While the allegations in the Motion for Judgment concerning the movement of the Courthouse are somewhat contradictory, the Court will adhere to its previously held view that the Motion for Judgment alleged, basically, that the County plans to move the Courthouse at some unspecified time in the future.

In his Memorandum in opposition to the Demurrer, the plaintiff cited *A Dictionary of American English* (1940) and cases from Arkansas, Georgia, Texas and Florida in support of his idea as to the meaning of "county seat." He then cited the case *Couk v. Skeen*, 109 Va. 6, 63 S.E. 22 (1908), for the proposition that "county seat" and "courthouse" are synonymous. He then cited Section 15.1-559 of the Code of Virginia for the proposition that the county seat/courthouse could not be moved without voter approval and concluded that the County offices could not be moved to Verona without voter approval.

Section 15.1-559 does not mention the term "county seat." The definition of county seat plaintiff employed has no support in any Virginia statute or case decision and, in fact, appears to be directly contrary to Virginia law when the *Couk* decision is considered together with the cases of *Edgerton v. Hopewell*, 193 Va. 493, 69 S.E.2d 326 (1952), and *Board of Supervisors v. Bacon*, 215 Va. 722, 214 S.E.2d 137 (1975).

In his Memorandum, plaintiff also advanced the theory that, since there is no statute which expressly authorizes a County to move the "county seat" absent a referendum, the proper application of "Dillon's Rule" prevents the County from moving its administrative offices without voter approval. Aside from the fact that there are a number of statutes which authorize, either expressly or by necessary implication, the Board of Supervisors, Commissioner of Revenue and Treasurer to do precisely what they have

done, this theory also fails for lack of any Virginia authority to support plaintiff's expansive definition of "county seat."

Prior to the Court's ruling on the Demurrer, the Board of Supervisors moved for sanctions on the basis of Section 8.01-271.1 of the Code. This Section, enacted by the General Assembly in 1987, is very similar to Rule 11 of the Federal Rules of Civil Procedure. This Court is not aware of any appellate court decisions construing or applying Section 8.01-271.1. However, there are a number of Federal decisions relating to Rule 11. Since the language employed by the General Assembly in adopting Section 8.01-271.1 is virtually identical to Rule 11, it must be assumed that these Federal decisions will be highly persuasive. As previously mentioned, the Court is aware of no Virginia appellate decisions on this issue. The defendants did cite the case of *Holding v. Duling*, a decision of the Circuit Court of the City of Richmond, as an example of a case in which sanctions had been imposed under the statute. However, the facts of the *Holding* case appear to differ significantly from the case at bar. The facts, which are always critical to any decision, will, I suspect, be particularly critical in any decisions applying this statute.

Section 8.01-271.1 applies to pleadings, written motions, oral motions, and other papers filed or made by an attorney or by an unrepresented party. By signing the document or making the oral motion, the attorney or party certifies or represents, as the case may be, to the Court that he has read the pleading, motion, or other paper; that to the best of his knowledge, information and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of the existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the costs of litigation. In other words, the attorney or unrepresented party is representing to the Court that he has knowledge of the contents of his motion or document, that he has made reasonable inquiry into the state of the facts and the law, and that his motion is made or document filed for a proper purpose. Significantly, if the Court finds

that the attorney or unrepresented party has violated this Section, sanctions are mandatory.

After reviewing a number of Federal decisions, the case of *Cabell v. Teddy*, 810 F.2d 463 (4th Cir. 1987), in particular, it appears that the Court must first examine the conduct of the attorney according to a standard of "objective reasonableness." The issue is, "whether a reasonable attorney in like circumstances could believe his actions to be factually and legally justified." 810 F.2d at 466. It is thus clear that "reasonable inquiry" means something more than reasonable effort. The attorney or unrepresented party is also required to reach reasonable conclusions. It is also clear that while subjective notions of good faith are significant in the determination of the type of sanction to impose, they are not relevant to the issue of whether some type of sanction should be imposed at all.

The facts and law pertaining to the original suit have been previously discussed. It is the opinion of the Court that, despite his obvious effort and apparent sincerity, the conclusions drawn by plaintiff as to the state of the law were unreasonable. Accordingly, it is the opinion of the Court that sanctions should be imposed.

The defendants have, by separate motions, requested that they be allowed attorney's fees for defending the original lawsuit, for resisting plaintiff's appeal in the Supreme Court, and for the effort expended in attempting to have sanctions imposed. Because of the result I reach in this case, it is not necessary to discuss whether any of these would be more appropriate than others.

The court in the *Cabell* case observed that the appropriate sanction is the least severe that will serve the purpose. This court further ruled that while largely subjective, factors such as good faith are relevant to the determination of the appropriate sanction to impose.

In the case at bar, the plaintiff obviously expended a great deal of energy in his effort to require the County to obtain voter approval before moving most of its offices out of the City where they had been located for almost 250 years. In my mind, while plaintiff may have been somewhat unreasonable and rigid in this case, had his intent been to harass, he clearly could have caused the defendants a great deal more trouble and expense. He did

not ask leave to amend even though it is relatively simple to make a Motion for Judgment "demurrer proof." By simply amending his Motion for Judgment and alleging the facts necessary to overcome a demurrer, plaintiff could have put the defendants to the expense and trouble of discovery. The Court is not able to divine any ulterior motive in plaintiff's conduct. Accordingly, it is the Court's view that a private reprimand is appropriate.