# COUNTY OF GREENSVILLE, ET AL.

## v.

# CITY OF EMPORIA, ET AL.

Record No. 920776

February 26, 1993

Present: All the Justices

C. *Richard Cranwell (James E. Buchholtz; Cranwell & Moore*, on brief), for appellants.

*Anthony F. Troy (Carter Glass, IV; Susan Warriner Custer; Theodore J. Burr, Jr., City Attorney; Mays & Valentine*, on brief), for appellees.

JUSTICE COMPTON delivered the opinion of the Court.

In this declaratory judgment proceeding, we consider whether the trial court correctly ruled that the County of Greensville may not construct and operate two circuit courthouses, and may not construct a new circuit courthouse at a site within the County without first obtaining referendum approval of the voters of both the County and the City of Emporia.

This controversy arose against the background of the following undisputed facts. Emporia formerly was a town that constituted a part of Greensville County. On July 31, 1967, Emporia became an independent city of the second class pursuant to a court decree entered in a town-to-city transition proceeding authorized by Chapter 623 of the 1962 Acts of Assembly. The City's municipal boundaries now are surrounded by, and contiguous with, the County's boundaries.

As a city of the second class, Emporia remains within the jurisdiction of the Circuit Court of Greensville County; the City and the County are within the same judicial circuit and are served by the same Circuit Court. The qualified voters of the City and the County jointly elect a commonwealth's attorney, a clerk of the circuit court, and a sheriff.

The County owns and maintains a two-story courthouse building that serves as the court facility for the Circuit Court, the General District Court, and the Juvenile and Domestic Relations District Court of Greensville County. The County also owns and maintains four other buildings housing various County governmental and administrative offices, the circuit court clerk's office, the sheriff's office, and a jail. All five buildings are located in the City on a 2.75-acre parcel, referred to as Courthouse Square.

As required by law, the City reimburses the County for a portion of certain costs and expenses of the circuit court and its clerk, the commonwealth's attorney, and the sheriff. The amount paid by the City is based on the proportion that the City's population bears to the aggregate population of the City and County. According to the

1990 census, the City has a total population of 5,306 persons while the County's total population is 8,853 persons.

On January 9, 1991, the County Board of Supervisors adopted a resolution that directed the County Administrator to proceed with all planning necessary to construct a new court building in the County on a six-acre parcel located near U.S. Highway 301. This land is not contiguous with the present courthouse site and is situated two and one-quarter miles from Courthouse Square. The resolution invited the City to join with the County in the construction of the new court facility along with a new jail facility at that location.

According to the resolution, the County intends to construct a court building at the new site to include: a courtroom and associated facilities for the Circuit Court of Greensville County; offices for the circuit court clerk; a courtroom and associated facilities for the County's courts not of record; and offices for the clerks of the courts not of record.

The County proposes to continue to operate and maintain the present courthouse on Courthouse Square in the City to provide a second courtroom and associated facilities for the use of the circuit court. The County also will provide at the City site offices for the County's treasurer and commissioner of revenue as well as a meeting room for the County Board of Supervisors. The County will construct a jail facility on the County site and cease using the building on Courthouse Square currently housing the jail.

The County will continue to maintain the other three public buildings owned by the County on Courthouse Square, and to maintain there an office for the circuit court clerk and other County administrative and governmental offices. Upon completion of the new building, the County no longer will provide at the Courthouse Square any courtrooms for the courts not of record or their clerks.

The City advised the County that it was opposed to construction of a court building on the County site; it maintained that referendum approval by voters of the City and County was required by law on the question of the construction of the new court facility. The County Board does not intend to request that such a referendum election be held.

In February 1991, the City and members of City Council (collectively, the City) filed a bill of complaint for declaratory judgment against the County and its Board of Supervisors (collectively, the County). After reciting the foregoing facts, the City asked the trial

court to declare that the construction and operation of two court-houses and clerk's offices for the Circuit Court of Greensville County would violate certain applicable statutes, and that the County may not construct a new courthouse at a site in the County without first obtaining referendum approval of the qualified voters of the City and County. Responding, the County asserted that its actions in planning the new facilities were necessitated by certain proceedings initiated by the Judges of the Circuit Court of Greens-ville County requiring that the City and County show cause why the existing courthouse and jail should not be made secure, put in good repair, and rendered otherwise sufficient. Essentially, the County denied that a referendum is required to build a new court facility on the new site.

The parties filed a joint stipulation of facts. Subsequently, the City filed a motion for summary judgment. At a January 1992 hear-ing, the judge designate considered the pleadings, the stipulation, memoranda of law, and argument of counsel. Ruling in favor of the City, the trial court declared that the construction and operation of two courthouses and two clerk's offices for the Circuit Court of Greensville County would violate a subchapter within Chapter 623 of the 1962 Acts of Assembly and Chapter 78 of the 1968 Acts, and that the County may not construct a new circuit courthouse at a site within the County, as proposed, without first obtaining referendum approval of the qualified voters of the County and the City pursuant to Code § 15.1-559. The County appeals.

■ A plain reading of the applicable statutes convinces us that the trial court ruled correctly. A subchapter within Chapter 623 of the 1962 Acts of Assembly, dealing with the transition of towns to cit-ies, expressly requires that a city of the second class and the county in which it lies must share a single courthouse. As pertinent, the enactment unambiguously provides:

"When the municipality is declared to be a city of the sec-ond class, such city shall at once be, become and continue in every respect within the jurisdiction of the circuit court of the county wherein it is situated and there shall be one and the same circuit court for such county and city. There shall be for such county and city but one courthouse and county clerk's office and the county clerk of the county shall continue in all

respects as the clerk of such circuit court. Such court shall continue to be known as the circuit court of the county wherein such city is located; . . .'' Acts 1962, ch. 623 at 1169-70.

This act was codified as § 15.1-997 of Chapter 22 of Title 15.1 (1973).

▉ In 1979, Chapter 22 was revised, and the revised provisions did not include an express one-courthouse limitation. Acts 1979, ch. 85 at 106 (codified as amended at Code § 15.1-997 (Supp. 1979)). However, as part of the 1979 revisions to Chapter 22, the General Assembly added Code § 15.1-1009 (1989) as a savings clause, providing as pertinent:

"This chapter shall in no way affect the organization, government, officers, charter or laws governing any city declared to be such prior to January first, nineteen hundred seventy-six, under the former acts of the General Assembly but as to such cities the statutes under which they were organized as cities shall continue in force; . . .'' Acts 1979, ch. 85 at 106.

Therefore, the one-courthouse limitation applies to transitions of towns to cities that occurred, as here, prior to 1976.

The County does not dispute that the one-courthouse limitation applies to the City. It argues, however, that the limitation does not apply to the County and, thus, there may be two courthouses under the circumstances of this case. Specifically, the County maintains that the 1962 version of Chapter 22, while applying to specified cities of the second class, does not apply to counties with which those cities share a circuit court. Focusing on the phrase "such cities" in § 15.1-1009, the savings provision, the County contends that the statute "only continues in force the repealed provisions of [Chapter 22] as they apply to 'such cities' as received a charter prior to January 1, 1976." The County says that the "savings provision in no way either expressly or implicitly applies to a county." In sum, the County argues that the current law "controlling the relationship between Greensville and Emporia, as a county and city of the second class, has no single courthouse mandate applicable to the County." We disagree.

Illogical results are created if the County's interpretation of "such cities" is applied consistently within the savings provision. The last clause of the savings provision provides that the revised

Chapter 22 "shall only apply to such cities as have or may be declared to be such after January 1, 1976." Code § 15.1-1009. If the County's interpretation of "such cities" is applied to the last part of the statute as it was to the first part, then the last clause would have to mean that the revised Chapter 22 applies only to cities of the second class created after 1976 and similarly has no application to counties. As the City points out, the result of this consistent interpretation of "such cities" means that neither the old nor new Chapter 22 transition statutes applies to counties.

The fact that the interpretation of "such cities" urged by the County is incorrect is demonstrated by the many statutes in Chapter 22 that expressly confer obligations on a county or county officers. *See, e.g.,* Code §§ 15.1-1000 (county commissioner of revenue), 15.1-1001 (county treasurer), 15.1-1002 (county treasurer and county taxes), 15.1-1003 (adjustment of county debt), and 15.1-1005 (sharing of circuit court expenses). Thus, if the phrase "such cities" is meant to limit the application of the savings provision to cities only, there is an irreconcilable conflict between the savings provision and the other provisions of Chapter 22 that impose obligations on a county.

Because we do not assume the General Assembly intends to enact irreconcilable statutory provisions, we construe enactments in a way that gives full effect to all the statutory language. *Marchand* v. *Division of Crime Victims' Compensation,* 230 Va. 460, 463, 339 S.E.2d 175, 177 (1986). Consequently, we conclude that the correct interpretation of the savings provision is that the former Chapter 22 applies to counties and cities involved in transitions before 1976 and the revised Chapter 22 applies to counties and cities involved in transitions after 1976. This means, of course, that the one-courthouse limitation in the 1962 version of Chapter 22, according to the savings clause, applies both to the County of Greensville and to the City of Emporia.

In addition, if we adopt the County's interpretation of the savings provision, an automatic violation of Chapter 78 of the 1968 Acts of Assembly results. Like the 1962 version of Chapter 22, Chapter 78 of the 1968 Acts, which granted Emporia its city charter, expressly requires: "There shall be for said county of Greensville and the city of Emporia but one circuit courthouse and circuit court clerk's office . . . ." Acts 1968, ch. 78 at 127. Because the County's proposal would result in the existence of more than one circuit courthouse

for the City and the County, this plan would violate the specific provisions of Chapter 78.

But the County argues that Chapter 78 is a special city chartering statute applicable only to the City and not the County. We have recognized, however, that a municipal charter, although a special act, may affect the rights of more than one local government. *See City of Portsmouth* v. *City of Chesapeake*, 205 Va. 259, 263-64, 136 S.E.2d 817, 821-22 (1964) (charter of City of Chesapeake specifically preserved right of City of Portsmouth to proceed with annexation suit against Chesapeake).

Given the one-courthouse limitation applicable here, the County may not construct and operate a new courthouse in the County and at the same time, as the County proposes, "continue to operate and maintain the present Courthouse on Courthouse Square" as "a second courtroom and associated facilities." Furthermore, before a new courthouse can be constructed in the County, as the County proposes, a referendum by County and City voters must be held pursuant to Code § 15.1-559. That statute is within Article 3 of Chapter 12 of Title 15.1 and is entitled "Removal of Courthouse." As pertinent, it provides:

> "A. Whenever one third of the registered voters of any county shall petition the circuit court of such county, or whenever the governing body of any county . . . request the circuit court of such county, for an election in such county on the question of the removal of the courthouse to one or more places . . . such court shall issue a writ of election. . . .

> "B. If the courthouse is used before and after removal for any city . . . as well as for the county, then the . . . qualified voters of such city shall be eligible to vote in any election on the question of relocating the courthouse. . . ."

■ When there is a proposal to remove a "courthouse" to a noncontiguous site, this statute requires voter approval. In contrast, Code § 15.1-561 provides: "The relocation of a courthouse to land contiguous with its present location is not such a removal as to require authorization by the electorate." And, § 15.1-561 makes clear that the reference in § 15.1-559 to "one or more places" does not mean that a courthouse can be moved to more than one place, but that more than one site can be suggested as the place to which it

can be relocated ("[i]f it shall appear . . . that a majority of the votes cast at such election are for the removal of the courthouse to one of the places specified in the petition or resolution . . .").

█ Additionally, we conclude that the term "courthouse" as used in § 15.1-559 means the permanent place for holding court, including the building, or the part thereof, appointed for the use and occupancy of the circuit court. *See Board of Supervisors* v. *Bacon*, 215 Va. 722, 724, 214 S.E.2d 137, 138 (1975); *Egerton* v. *City of Hopewell*, 193 Va. 493, 501, 69 S.E.2d 326, 331 (1952); *Couk* v. *Skeen*, 109 Va. 6, 11, 63 S.E. 11, 13 (1908) (in Virginia, the term "courthouse" is synonymous with "county seat"); *Ingles* v. *Straus*, 91 Va. 209, 214-22, 21 S.E. 490, 491-94 (1895) (using terms "courthouse" and "county seat" interchangeably). *See also Tullidge* v. *Board of Supervisors*, 239 Va. 611, 391 S.E.2d 288 (1990).

We are not persuaded by the County's argument, based on an exhaustive review of constitutional and statutory history, as well as reliance on cases from other jurisdictions, that no referendum is required before an "additional circuit court facility" can be constructed in the County. According to the County, the words "removal of the courthouse" as used in § 15.1-559 mean the removal of a county seat. As we understand the County's theory, it is that, even though "courthouse" and "county seat" are used synonymously in Virginia, a county seat is not a location where the judicial function is performed. Rather, it is the place where "county governmental business is transacted." Hence, according to the premise, the removal of the site where the judicial function is performed does not fall within the meaning of the statute dealing with courthouse (*i.e.* county seat) removal. A mere statement of the theory reveals the fallacy of the idea. In essence, the argument is that, contrary to Virginia law, the term "courthouse" is not synonymous with "county seat."

█ Nor are we persuaded by the County's contention that the 1986 pluralization of the word "courthouse" in Code § 15.1-257 gives Greensville the authority "to construct multiple circuit court facilities." Prior to 1986 amendments, the statute provided, in part:

"The governing body of every county and city shall provide a courthouse with suitable space and facilities to accommodate the various courts of record and officials thereof serving the county or city, and, within or without such courthouse, a

clerk's office . . . . The fee simple of the lands shall be in the county or city . . . ." § 15.1-257 (1973).

By amendment in 1986, the phrase "of record" was deleted in the first sentence and the term "courthouse" was changed to "courthouses" in both places where it appeared. In addition, the last sentence quoted above was amended to read: "The fee simple of the lands and of the buildings and improvements thereon utilized for such courthouses shall be in the county or city . . . ." Acts 1986, ch. 90 at 118-19 (codified as amended at Code § 15.1-257 (1987)).

The statute is not applicable here. It is a general statute, dealing with the ownership of "lands" and "buildings" used for court facilities; it is not a statute, like § 15.1-559, that specifically deals with removal of courthouses. As the City argues, the deletion of the phrase "of record" clarified that the expanded ownership requirement applied both to circuit courts and to courts not of record. With the inclusion of courts not of record, it was necessary to pluralize "courthouse," because circuit courts and courts not of record need not be housed in the same courthouse building.

Consequently, we find no error in the judgment below and it will be

*Affirmed.*