# CIRCUIT COURT OF THE CITY OF RICHMOND

City of Richmond
City Council

v.

L. Douglas Wilder,
Mayor of the
City of Richmond, et al.

November 29, 2007

Case No. CL07-2426-4

BY JUDGE MARGARET P. SPENCER

This matter is before the Court on a summary judgment motion filed by Plaintiff, City Council of the City of Richmond, and a cross-motion for summary judgment filed by Defendants L. Douglas Wilder, Mayor of the City of Richmond, Tyrone Jackson, Ed. D., Director of Human Resources of the City of Richmond ("Director"), and Harry E. Black, Deputy Chief Administrative Officer. The Court has considered the pleadings, motions, memoranda, arguments, and applicable law. The Plaintiff's summary judgment motion is granted and the Defendants' cross-motion for summary judgment is denied.

## I. *Background*

The following facts are undisputed.

On April 23, 2007, the Mayor notified Council that several Council appointments were void because Council lacked the power to appoint employees to the designated positions. (Compl. ¶ 6.) The affected employees were "the City Assessor (and through the Assessor, his staff), Council Liaisons, Council Chief of Staff, Council Policy Analyst, Council Public Relations Specialist, Council Budget Analyst, and Director of Legislative Services" (collectively "affected employees" or "affected positions"). (Compl. ¶ 1; Exhibit E, Pl. Memo, Def. Answer ¶ 6;[1] Exhibit C, Pl. Memo, Def. Admission ¶ 1.)

On April 24, 2007, the Director of Human Resources notified the affected employees they had to reapply for their jobs and submit a "letter of interest" to retain their jobs. (Compl. ¶ 8; Exhibit C, Pl. Memo, Def. Admissions ¶ 4; Exhibit E, Pl. Memo, Def. Answer ¶ 8.) On April 30, 2007, Mr. Black terminated the employment of the Director of Legislative Services "effective Friday, April 27, 2007." This employee was the only affected employee who did not submit a "letter of interest." The notice to this employee was on City of Richmond letterhead that listed Mr. Black as Acting Chief Administrative Officer ("Acting CAO"). The letter was signed by Mr. Black as the CAO. (Compl. ¶ 11; Exhibit C, Pl. Memo, Def. Admissions ¶ 9; Exhibit E, Pl. Memo, Answer ¶ 11.) Mr. Black was not the CAO (Exhibit C, Pl. Memo, Def. Admissions ¶¶ 12, 23), but he was the Deputy Chief Administrative Officer ("Deputy CAO"). (Exhibit A, Defendants' Memorandum in Support of Cross-Motion.[2])

## II. *Procedural History*

On May 10, 2007, the Plaintiff filed a Complaint for Declaratory Judgment, seeking the Court's declaration as to the powers and duties of Council and the powers and duties of the Mayor, the Director of Human

---

[1] Exhibit E of Plaintiff's Memorandum in Support of Motion for Summary Judgment is Defendants' Answer. All exhibits from Plaintiff's Memorandum in Support of Motion for Summary Judgment will be referred to as "Exhibit, Pl. Memo" followed by an appropriate description of the exhibit.

[2] Defendants' Memorandum in Support of Cross-Motion will be referred to as "Def. Memo."

Resources, the CAO, and the Acting CAO under the City Charter of the City of Richmond with respect to Council's appointment of the affected employees. (Compl. ¶¶ 1-2.)

Council specifically prayed for the following relief:

To declare that Council acted within its powers and duties under the laws of the Commonwealth and the City Charter in creating the impacted positions;

To declare that Council had the power to appoint the employees to fill the impacted positions;

To declare that Mr. Black is not the Acting CAO and may not exercise the duties, responsibilities, or powers of the CAO or acting CAO, until or unless he receives an affirmative vote of a majority of the members of City Council under the advice and consent provisions of the City Charter, and to declare any actions taken by Mr. Black under the auspices of the Acting CAO are null and void;

To declare that the Mayor, the Director of Human Resources, the CAO, or the Acting CAO (when these last two positions are properly filled) have no power to appoint or remove the impacted employees;

To declare that the actions of the Mayor, the Director of Human Resources, and the Director of the Department of Finance exceeded the scope of their authority by taking the actions described above with respect to the impacted positions and that the actions taken pursuant to the Mayor's letter, the Director's letter, and the Separation Notice are null and void and without legal effect;

To retain jurisdiction over this matter and that it remain on the docket for a reasonable time for the Defendants to take any actions that are consistent with the declaration sought, and to permit Council, if necessary, to return to this Court and seek all appropriate further relief pursuant to Va. Code § 8.01-186;

To award such other and further relief that the Court deems meet and just under the circumstances. (Compl., Prayer for Relief ¶¶ 1-7.)

Plaintiff and Defendants seek summary judgment. Plaintiff claims the impacted positions are legislative positions. Plaintiff also claims (1) Council has the authority to appoint employees to these positions and (2) neither the CAO, the Acting CAO, nor a Deputy CAO has this authority. The Defendants claim (1) the Deputy CAO can perform the same duties as the Chief Administrative Officer ("CAO") and (2) the CAO has the authority to appoint employees to the affected positions. The parties agree the facts material to the resolution of the Plaintiff's motion are undisputed. (Def. Memo, p. 4; Pl. Memo, pp. 4-5.)

## III. *Summary Judgment*

"A trial court may enter summary judgment only if no material fact is genuinely in dispute. Rule 3:18 (now Rule 3:20). A court in considering such a motion must adopt those inferences from the facts that are most favorable to the non-moving party, 'unless the inferences are strained, forced, or contrary to reason'." *Carson v. LeBlanc,* 245 Va. 135, 139-40, 427 S.E.2d 189, 192 (1993) (citation omitted). In reviewing motions for summary judgment, the Court can consider undisputed facts established by pleadings, admissions in pleadings, and admissions made in answers to requests for admissions. *Hanley* v. *Stanley Martin Cos.,* 266 Va. 345, 351, 585 S.E.2d 567, 571 (2003). "[S]tatutory interpretation . . . presents a pure question of law." *Torloni v. Commonwealth,* 274 Va. 261, 266, 645 S.E.2d 487, 490 (2007). Here, there are no material facts genuinely in dispute and the Plaintiff is entitled to judgment as a matter of law.

## IV. *Analysis*

### A. *Does the Deputy CAO Have the Same Power, Duties, and Responsibilities as the CAO?*

This Court's analysis begins with the undisputed fact that the personnel actions at issue were not exercised by the CAO. Mr. Black, a Deputy CAO, exercised them. In fact, "[d]efendants do not dispute that Mr. Black is not now, nor was he ever, confirmed by City Council to the position of Chief Administrative Officer or the position of Acting Chief Administrative Officer." (Def. Memo, p. 8.) Therefore, the initial issue before the Court is whether a Deputy CAO has the authority to appoint employees to the affected positions.

On November 8, 2005, William E. Harrell, Chief Administrative Officer of the City of Richmond, asked Council to establish a Deputy Chief Administrative Officer employee classification. The request stated employees in "this classification will manage a portfolio of City departments." (Exhibit B, p. 2, Def. Memo.) There are three Deputy CAO positions, including Mr. Black's position, "Deputy Chief Administrative Officer/Chief Financial Officer," and the position of "Deputy Chief Administrative Officer for Human Services." (Council's Reply Memorandum in Support of Summary Judgment, p. 13 "Council's Reply.") The exact title of the third Deputy CAO position is not in the record. The "Class Description" of the Deputy CAO states the

"purpose of the class is to function as Deputy Chief Administrative Officer with oversight responsibility for specific portfolio areas as assigned by the Chief Administrative Officer (CAO)." (Exhibit P, Council's Reply.) Therefore, City documents assign the Deputy CAO designated duties – related to "a portfolio of City departments" or "specific portfolio areas assigned by the CAO" – but do not state the Deputy CAO can perform all duties of the CAO.

Furthermore, there is no provision in the Charter or the Code of Virginia establishing the position or powers of a local government's Deputy CAO. Defendants claim a City Deputy CAO can exercise the same powers as the CAO pursuant to the City of Richmond Charter § 5.02, Va. Code § 15.2-1502, and § 1-2 of the City Code.

However, a review of these statutes establishes that a City Deputy CAO cannot exercise the same range of powers as the City's CAO.

Charter § 5.02 states:

> *Power of Appointment and Removal.* The chief administrative officer shall appoint for an indefinite term qualified officers and employees to head all the administrative departments of the city, and shall appoint, dismiss, and discipline, in accordance with the city's personnel regulations, all officers and employees in such departments, except as otherwise specifically provided by law or this charter. Department heads who are appointed by the chief administrative officer shall serve at the pleasure of the chief administrative officer.
>
> The chief administrative officer shall designate some other officer or employee to perform the duties of any office or position of the administrative service under his/her control which is vacant or which lacks administration due to the absence or disability of the incumbent.

This provision grants the CAO the authority to appoint "employees to head all the administrative departments" and "all officers and employees in such departments." Assuming the Deputy CAO is deemed the "head" of an administrative department, e.g., Finance or Human Resources, this provision neither states the powers of the heads of administrative departments nor grants such heads the same powers as the CAO over all administrative departments.

Section 15.2-1502 of the Code of Virginia, although not establishing a Deputy CAO position, does authorize the appointment of a local government "deputy." It states, in pertinent part:

A. Local government officers may employ, when duly authorized by the governing body, deputies and assistants to aid them in carrying out their powers and duties. . . .

B. "Deputy" means a person who is appointed to act as a substitute for his principal in the name of the principal and in his behalf, in matters in which the principal himself may act; such person shall be a public officer. . . .

D. Subject to the limitations and requirements of the preceding subsections, an officer of a locality may delegate, to a person reporting to him, his powers and duties unless it is some power or duty the exercise of which by another person is expressly forbidden by law or requires the exercise of judgment for the public welfare. However, such delegation shall not act to relieve the officer making such delegation of his legal obligations for the exercise of powers and performance of duties of his office.

Section 1-2 of the Richmond City Code, consistent with Va. Code § 15.2-1502, states: "Delegation of authority: Any reference to any specific officer shall be deemed to include such officer's duly authorized deputy, agent, or representative, subject, however to Code of Virginia § 15.2-1502."

Section 15.2-1502 contains several limitations. The deputy must be "duly authorized" by a locality's governing body to "aid" government officers "in carrying out their powers." A "deputy" means a person "appointed to act as a substitute" for the principal. In addition, a deputy may not be delegated a duty which "requires the exercise of judgment for the public welfare." The "officer of a locality may *delegate*, to a person reporting to him, *his powers and duties*."

Here, Mr. Harrell did not "delegate" to the Deputy CAOs *all* the CAO's "powers and duties." The Deputies were appointed by Mr. Harrell and duly authorized by Council to manage designated "portfolios." This undisputed fact negates any inference that the City's Deputy CAOs were "duly authorized" or "appointed to" perform all the duties and powers of the CAO. More importantly, the facts negate any inference that Mr. Black, the Defendant Deputy CAO here, was "duly authorized" by Council "to aid" the CAO in carrying out all powers and duties of the CAO. The facts also negate the inference that Mr. Black was "appointed" by Mr. Harrell "to act as a substitute for the [CAO], in the name of the [CAO] and in his behalf" in all "matters in which the [CAO] himself may act." The undisputed facts establish that Mr. Black was authorized and appointed to administer and manage specific

"portfolios" related to the City's finances. In addition, Mr. Harrell could not, under this statute, delegate to Mr. Black a duty that "requires the exercise of judgment for the public welfare."

Finally, Defendants claim a Deputy CAO employed "without definite term," who is neither appointed by the mayor nor approved by the Council, may exercise all the powers of the Chief Administrative Officer. If the Court accepts this claim, the Court must ignore the clear intent of Section 5 of the Charter. Section 5.01.1 states the CAO must be appointed by the Mayor and approved by the Council:

> § 5.01.1. *Chief Administrative Officer*. The mayor shall appoint a chief administrative officer, subject to the advice and consent of a majority of the members of city council, who shall be chosen solely on the basis of his/her executive and administrative qualifications, with special reference to his/her actual experience in or knowledge of accepted practice with respect to the duties of his/her office. At the time of his/her appointment, the chief administrative officer need not be a resident of the city or the Commonwealth but he/she shall reside within the city during his/her tenure in office. The chief administrative officer shall serve at the pleasure of the mayor. The mayor shall set the salary of the chief administrative officer subject to the approval of a majority of the members of city council.

In the absence of the CAO, the Mayor may appoint an Acting CAO, subject to the advice and consent of Council. (Charter § 5.07.) Sections 5.01.1 and 5.07 of the Charter would be rendered null and void if a Deputy CAO who is neither appointed by the Mayor nor approved by Council and who has no definite term in office can exercise all of the powers of the CAO.

Finally, in the absence of a CAO or Acting CAO, the Charter indicates neither the Mayor nor Council can "give orders" to the Deputy CAO. Section 5.03 of the Charter states:

> Except for the purpose of inquiry, the mayor, council, and its members shall deal with the administrative services solely through the chief administrative officer, and neither the mayor, council, nor any member thereof shall give orders either publicly or privately to any subordinate of the chief administrative officer.

A Deputy CAO is a subordinate of the CAO. Thus, if the Court accepts Defendants' arguments, a Deputy CAO, who (1) is hired for no definite term, (2) is hired without the approval of the Mayor or Council, and (3) accepts orders from neither the Mayor nor Council, would exercise all the powers of the CAO set forth in the City Charter. This conclusion is contrary to the Charter and leads to an absurd result.

For the foregoing reasons, the Deputy Chief Administrative Officer has the authority to exercise only those powers specifically delegated by the Chief Administrative Officer, as set forth in applicable City documents, including Council ordinances and resolutions.

B. *Does the Chief Administrative Officer Have the Power to Appoint and Remove Employees in the Affected Positions?*

Pursuant to City Charter § 4.02, the Council established its legislative staff by adopting ordinances that created the affected positions[3] and vesting appointing authority for each affected position with Council. (Exhibit G, Pl. Memo.) The Council also passed City Code provisions which codified the ordinances for each legislative position.[4] (Exhibit H, Pl. Memo.) Finally, Council adopted resolutions appointing a person to serve in each affected legislative position. (Exhibit I, Pl. Memo.) Pursuant to Va. Code Ann. § 58.1-1, *et seq.*, Council also established the Office of the Assessor of Real Estate and the City Assessor position, codified the act in the City Code, and, by resolution, appointed a person to this affected City Assessor position. (Exhibits J, K, and L, Pl. Memo.)

---

[3] Ordinance No. 2004-361-353 created the position of Council Chief of Staff; Ordinance No. 2004-364-356 created the position of Council Public Relations Specialist; Ordinance No. 2004-363-355 created the position of Council Budget Analyst, and Ordinance No. 2004-362-354 created the position of Council Policy Analyst. These ordinances were adopted on December 13, 2004. The positions of Council Liaisons were created by Ordinance No. 2001-39-47, which was adopted on February 12, 2001. The position of Director of Department of Legislative Services was created by Ordinance No. 2006-143-160 which was adopted on June 12, 2006.

[4] Council Chief of Staff is codified in City Code § 2-32. Council Public Relations Specialist is codified in City Code § 2-35. Council Budget Analyst is codified in City Code § 2-34. Council Policy Analyst is codified in City Code § 2-33. Council Liaisons are codified in City Code § 2-31. Director of Department of Legislative Services is codified in City Code § 2-802.

Defendants claim only the CAO or Acting or Deputy CAO has the authority to appoint and remove employees in these affected positions. Defendants state "there is no section in the City Charter that provides City Council with appointment and removal authority over positions of employment except for the City Clerk, the City Attorney and the City Auditor. City Council's involvement in hiring and removal is instead expressly limited by the General Assembly with the 'ultimate responsibility' for personnel decisions deliberately granted to the Chief Administrative Officer." (Def. Memo, p. 7.) The "ultimate responsibility" language is quoted from Section 5.03 of the City Charter. Section 5.03 is set forth below:

> § 5.03. *Involvement of Mayor and Council in Appointment and Removals.* The mayor may participate in the hiring and removal of heads of city departments. The mayor and members of council may (i) communicate publicly or privately their approval or disapproval of the performance of any particular city employee, (ii) recommend persons to the chief administrative officer for consideration for hiring or promotion, or (iii) request of the chief administrative officer that he remove or take other disciplinary action against any particular city employee, as they may see fit. *Ultimate responsibility for hiring, removal, and other personnel decisions, and for the directing of city personnel, shall reside in the chief administrative officer, unless expressly provided otherwise in this charter.* Except for the purpose of inquiry, the mayor, council, and its members shall deal with the administrative services solely through the chief administrative officer, and neither the mayor, council, nor any member thereof shall give orders either publicly or privately to any subordinate of the chief administrative officer.

(Emphasis added.)

Defendants argue the highlighted sentence in Section 5.03 authorizes the CAO to appoint and remove all city employees. This argument is without merit.

Charter § 5.02 set forth above, is clear in its language. It is entitled "Power of Appointment and Removal." It states the CAO "shall appoint for an indefinite term qualified officers and employees to head all *the administrative departments of the city.*" Further, the CAO "shall appoint, dismiss, and discipline, in accordance with the city's personnel regulations, all officers and employees in such departments, except as otherwise specifically provided by

law or this charter." Under § 5.02, the CAO has the authority to hire and fire *only* the heads of the administrative departments and the employees of these departments.

Charter § 5.03 is entitled "Involvement of Mayor and Council in Appointment and Removals." In addition to stating the involvement of the Mayor and Council in appointing and removing department heads, it includes the "ultimate responsibility" sentence. This sentence implies the CAO has authority over all city employees, whether legislative, administrative or executive, or judicial branch employees, "unless expressly provided otherwise in this charter."

However, other Charter provisions and the Virginia statutes implicitly grant Council the authority to hire legislative personnel necessary for the performance of Council's legislative functions. Moreover, Virginia statutes explicitly grant Council the authority to appoint the City Assessor. An analysis of the Charter, Virginia statutes, the principles of statutory construction, and the principles of separation of powers in Virginia indicates the City's CAO has, as a matter of law, the authority to appoint and remove only administrative or executive branch employees.

1. *The Affected Legislative Positions: Council Liaisons, Council Chief of Staff, Council Policy Analyst, Council Public Relations Specialist, Council Budget Analyst, and Director of Legislative Services*

In Virginia, cities have "only those powers that are expressly granted, those necessarily or fairly implied therefrom, and those that are essential and indispensable." *Commonwealth v. Arlington County Bd.*, 217 Va. 558, 574, 232 S.E.2d 30, 40 (1977) (citation omitted). This principle is referred to as the "Dillon Rule." Where "a grant of power is general in its terms, the necessary means for carrying into execution the power granted must be implied before the authority may be exercised." 217 Va. at 574, 232 S.E.2d at 42. The test in application of the doctrine is reasonableness. *Id.*

The Virginia Uniform Charter Powers Act (Va. Code Ann. § 15.2-1100 *et seq.*) complements the Dillon Rule. Section 15.2-1102 of the Code of Virginia states:

> A municipal corporation shall have and may exercise all powers which it now has or which may hereafter be conferred upon or delegated to it under the constitution and laws of the commonwealth and all other powers pertinent to the conduct of the affairs and functions of the municipal government, the

exercise of which is not expressly prohibited by the constitution, and general laws of the commonwealth, and which are necessary or desirable to secure and promote the general welfare of the inhabitants of the municipality . . . . and the enumeration of specific powers shall not be construed or held to be exclusive or as a limitation upon any general grant of power, but shall be construed and held to be in addition to any general grant of power.

The fundamental premise underlying the Dillon Rule and the Virginia Uniform Charter Powers Act is that not all powers of a City, exercised by a City's governing body, need be expressly set forth in the City's Charter. "All powers vested in a municipal corporation by this chapter shall be exercised by its governing body." Va. Code § 15.2-1100. See also § 15.2-1401 ("powers granted to localities shall be vested in their respective governing bodies") and City Charter § 4.02: ("All powers vested in the city shall be exercised by the council except as otherwise provided in this charter.")

Therefore, a governing body may provide for all governmental functions of the city, including the organization, conduct, and operation of its legislative functions. *See* Va. Code Ann. §§ 15.2-1107 and 15.2-1500. Moreover, in performing its necessary duties, obligations, and functions, a governing body may adopt, as appropriate, ordinances, resolutions, and motions. Va. Code Ann. § 15.2-1425. These statutes are consistent with similar provisions in Richmond's City Charter.

Section 2.01 of the Charter provides:

The city shall have and may exercise all powers which are now or may hereafter be conferred upon or delegated to cities under the Constitution and laws of the Commonwealth and all other powers pertinent to the conduct of a city government the exercise of which is not expressly prohibited by the said Constitution and laws and which in the opinion of the council are necessary or desirable to promote the general welfare of the city and the safety, health, peace, good order, comfort, convenience, and morals of its inhabitants, as fully and completely as though such powers were specifically enumerated in this charter, and no enumeration of particular powers in this charter shall be held to be exclusive but shall be held to be in addition to this general grant of powers.

This provision gives the City "powers pertinent to the conduct of a city government" and "necessary or desirable to promote the general welfare of the city." Implicit in this power is the power to hire and fire employees, administrative or non-administrative, necessary to operate a city safely and effectively. Charter § 4.02 provides:

> All powers vested in the city shall be exercised by the council except as otherwise provided in this charter. In addition to the foregoing, the council shall have the following powers:
>
> (a) To provide for the organization, conduct, and operation of all departments, bureaus, divisions, boards, commissions, offices, and agencies of the city.
>
> (b) To create, alter, or abolish departments, bureaus, divisions, boards, commissions, offices, and agencies other than those specifically established by this charter.
>
> (c) To create, alter, or abolish and to assign and reassign to departments, all bureaus, divisions, offices, and agencies except where such bureaus, divisions, offices, or agencies are specifically assigned by this charter.
>
> (d) To provide for the titles, qualifications, powers, duties, and compensation of all officers and employees of the city, subject in the case of members of the classified service to the provisions of § 5A.03 of this charter.
>
> (e) To provide for the form of oaths and the amount and condition of surety bonds to be required of certain officers and employees of the city.

This section vests in the Council, as the governing body of the City, all powers granted to the City by the General Assembly unless a power is specifically delegated elsewhere in the Charter. Subsections (a)-(e) clearly give the Council the power to organize the City government and the powers necessary to effectuate its established organization of City government. Such powers are not limited to non-administrative departments, bureaus, divisions, boards, commissions, offices, and agencies of the City, but include all administrative departments, bureaus, divisions, boards, commissions, offices, and agencies of the City. These sections of the Charter vest in Council the powers to organize and operate the City government, including hiring and firing employees, unless the Charter vests that power in some other actor in the City government.

Council's implicit power to appoint legislative employees, pursuant to § 4.02 of the Charter, does not conflict with the CAO's explicit power to appoint administrative employees, pursuant to § 5.02 of the Charter. However, Council's power to appoint legislative employees and the CAO's explicit power to appoint administrative employees are inconsistent with the sentence in § 5.03 that states the CAO has the "ultimate responsibility" for "personnel decisions" involving "city personnel." If the CAO has "ultimate responsibility" for all city employees, there is no need for § 5.02's provision limiting this authority to administrative employees.

The "ultimate responsibility" sentence is also inconsistent with § 5.04 of the Charter, titled "Temporary transfer of personnel between departments." This section states:

> § 5.04. *Temporary Transfer of Personnel between Departments.*
> The chief administrative officer shall have power, whenever the interests of the city require, irrespective of any other provisions of this charter, to assign employees of any department, bureau, office, or agency, the head of which is appointed by the chief administrative officer, to the temporary performance of duties in another department, bureau, office, or agency.

This section grants the CAO the authority to temporarily transfer employees to another department, but only if the head of the department is appointed by the CAO. It acknowledges that the heads of departments may be appointed by other actors in City government. If not, the last phrase in this section would be unnecessary. It is consistent with § 5.02, which states the CAO appoints the heads of administrative departments only.

"Under well-settled principles of statutory construction, we may not adopt an interpretation of one statute that conflicts with the plain language of another." *Washington v. Commonwealth*, 272 Va. 449, 458-59, 634 S.E.2d 310, 315-16 (2006). If the language of a statute "is ambiguous, we apply settled rules of statutory construction to determine the legislature's intent in its use of the language in question." *Buonocore v. Chesapeake & Potomac Tel. Co.*, 254 Va. 469, 472, 492 S.E.2d 439, 441 (1997). "Language is ambiguous if it admits of being understood in more than one way, refers to two or more things simultaneously, is difficult to comprehend, is of doubtful import, or lacks clearness and definiteness." *Gillespie v. Commonwealth*, 272 Va. 753, 758, 636 S.E.2d 430, 432 (2006).

Charter § 5.03, when considered with §§ 5.02 and 5.04, lacks clearness and definiteness. Sections 5.02 and 5.04 grant specific power to the CAO over a limited set of employees of the City. Section 5.03 appears to state a broader grant of power for the CAO. It apparently grants the CAO the same power that §§ 5.02 and 5.04 give the CAO, but for all city employees. Taken at its literal implication, § 5.03 renders §§ 5.02 and 5.04 moot. "[W]e do not rely on rules of statutory construction . . . unless a literal application would produce a meaningless or absurd result." *Crown Cent. Petroleum Corp. v. Hill*, 254 Va. 88, 91, 488 S.E.2d 345, 346 (1997). A consideration of only the "ultimate responsibility" sentence in § 5.03 leads to "a meaningless or absurd result."

Further, "a statute is not to be construed by singling out a particular phrase." *Virginia Electric & Power Co. v. Citizens for Safe Power*, 222 Va. 866, 869, 284 S.E.2d 613, 615 (1981). Therefore, it is necessary to analyze the meaning of § 5.03 using other rules of statutory construction.

It is elementary that, in searching for the intention of the legislature, the court must consider the object of the statute and the purpose to be accomplished. Another general rule applicable here is that, in construing a statute, the whole body of the act must be examined with a view to arriving at the true intention of each part. All of its parts must be considered so as to make it harmonious.

*Rockingham Co-operative Farm Bureau, Inc. v. Harrisonburg*, 171 Va. 339, 344, 198 S.E. 908, 910 (1938).

"It is a general rule in the interpretation of statutes that the whole body of the act is to be examined with a view to arrive at the true intention of each part. All of its parts must be examined so as to make it harmonious if possible." 17 M.J., *Statutes*, § 41. "[W]hen construing statutes that impact the same subject, the courts must harmonize their provisions whenever possible." *Miller v. Highland County*, 274 Va. 355, 364, 650 S.E.2d 532, 535 (2007) (citations omitted). "Closely related statutes must be read as being consistent with one another." *Meierotto v. Commonwealth*, 50 Va. App. 1, 4, 646 S.E. 2d 1, 2 (2007). *See also, Commonwealth v. Fairfax County Sch. Bd.*, 49 Va. App. 797, 803-04, 645 S.E.2d 337, 340 (2007) ("Under the rules of statutory construction, closely related statutes must be read as being consistent with one another.") "When a given controversy involves a number of related statutes, the rules of statutory construction direct that those statutes be read and construed together in order to give full meaning, force, and effect to each." *Washington*, 272 Va. at 455, 634 S.E.2d at 314; *see also, Alston v.*

*Commonwealth*, 274 Va. 759 (2007) ("It is a cardinal rule of construction that statutes dealing with a specific subject must be construed together in order to arrive at the object sought to be accomplished.").

Rather than considering the "ultimate responsibility" sentence in § 5.03 in isolation, this Court must consider it with all the sentences in § 5.03 and with all of Chapter 5 of the City Charter. Section 5.01 provides a description of the Mayor's duties. This section is followed by § 5.01.1 which creates the CAO for the City and defines the relation between the Mayor and the CAO. Sections 5.02 through 5.04 follow and are the only sections in Chapter 5 which refer to the duties of the CAO.

If § 5.03 is viewed as a continuation of § 5.02, i.e., as a further limitation on Council's power over administrative employees, then the "ultimate responsibility" sentence makes sense. It does not lead to absurd results because it can be understood to refer to administrative personnel only. Thus Council and the Mayor can make recommendations on hiring, firing, promoting, and disciplining administrative employees, but the CAO is responsible for deciding these issues.

This construction is also consistent with the sentence following the "ultimate responsibility" sentence in § 5.03. This third sentence states the Mayor, Council, and its members "shall deal with *the administrative services* solely through the chief administrative officer" and neither the Mayor nor Council can "give orders" to subordinates of the chief administrative officer. The only subordinates of the CAO set forth in the Charter are employees of "the administrative departments" and employees in "the administrative service." § 5.02. The phrase "administrative service(s)," although used in § 5.02, is not mentioned in the first two sentences in § 5.03.

Moreover, by implication, if the mayor and council are prohibited from dealing with "administrative services" personnel, the General Assembly contemplated the existence of other personnel, or "non-administrative services" personnel, employed by the mayor and council. These "non-administrative services" employees, consistent with § 5.02's authorization for appointment of only administrative employees by the CAO, would be appointed and removed by someone other than the CAO. We "must assume that the General Assembly chose, with deliberation and care, the words it employed in the statute." *Miller*, 274 Va. at 364, 650 S.E.2d at 535. There would be no need to designate employees as "administrative" if the CAO had "ultimate responsibility" for *all* employees, administrative and non-administrative.

This interpretation allows § 5.04 to make sense as well. Since the CAO is specifically limited to the powers vested in him by the Charter, the power to reassign employees on a temporary basis would be vested in Council absent a

specific provision to the contrary. If § 5.03 granted the CAO absolute power over all City employees, § 5.04 would not be necessary. If § 5.03 only clarifies that Council and the Mayor cannot interfere in the CAO's relationships with his subordinates, § 5.04 is necessary to grant him the authority to temporarily reassign employees as needed.

Further, the argument that the power to appoint and remove all City employees resides only in the CAO leads to absurd results. The separation of governmental powers is a general principle inherent in the American constitutional system. This principle requires the division of powers, and separate government branches – the executive, legislative, and judicial. Article III, § 1, of the Constitution of Virginia, titled "Departments to be distinct" sets forth this separation for Virginia's state government:

> The legislative, executive, and judicial departments shall be separate and distinct, so that none exercise the powers properly belonging to the others, nor any person exercise the power of more than one of them at the same time. . . .

The General Assembly, which acknowledged the separation of powers in state government, could not have intended an executive branch employee to exercise "ultimate responsibility" for personnel decisions in the legislative and judicial branches of a city government. If so, the CAO here could use this power to appoint, remove and direct all City personnel in all three branches.

Therefore, for the foregoing reasons, this Court declares that the power to appoint and remove these affected legislative employees resides solely with Council.

### 2. The Affected City Assessor Position

A state statute, Va. Code Ann. § 58.1-3271, provides for the appointment of an assessor for a locality:

> A. In the event the commissioner of revenue, pursuant to the provisions of § 58.1-3270, will not consent to make an annual or biennial assessment and equalization of real estate for local taxation in any county or city, the governing body thereof may appoint a board of real estate assessors. . . .
> B. The governing body of any such county or city may appoint a real estate appraiser to perform the actual function of determining value for real estate in the county or city for use by

> the board of assessors. If such appraiser is certified as a professional assessor by the Department, he may serve in lieu of the board of assessors provided for in subsection A.

The governing body of the City of Richmond is the City Council. This section of the Code of Virginia clearly grants Council the authority to appoint a City Assessor.

As noted above, the Charter has two sections, § 5.02 and § 5.03, that refer to the CAO's authority to appoint and remove employees.

> The chief administrative officer shall appoint for an indefinite term qualified officers and employees to head all the administrative departments of the city and shall appoint, dismiss, and discipline, in accordance with the city's personnel regulations, all officers and employees in such departments, *except as otherwise specifically provided by law or this charter.*

Richmond City Charter § 5.02 (in pertinent part) (emphasis supplied).

> Ultimate responsibility for hiring, removal, and other personnel decisions, and for the directing of city personnel, shall reside in the chief administrative officer, *unless expressly provided otherwise in this charter.*

Richmond City Charter § 5.03 (in pertinent part) (emphasis supplied).

Defendants cite these two charter provisions to support the claim that the CAO has the authority to appoint and remove the City Assessor. Section 5.02 explicitly states the CAO's authority is overridden by statute or other charter provision. Section 5.03 states the CAO's authority is overridden by other Charter provisions. Both Charter provisions conflict with § 58.1-3271 of the Code of Virginia.

"Because we do not assume the General Assembly intends to enact irreconcilable statutory provisions, we construe enactments in a way that gives full effect to all the statutory language." *County of Greensville v. Emporia,* 245 Va. 143, 149, 427 S.E.2d 352, 356 (1993). The Virginia statute, § 58.1-3271, must be given "full effect," and the italicized language in the two charter provisions must be given "full effect." Therefore, the "expressly provided otherwise" language in Charter § 5.03 refers to the express language in Charter § 5.02 limiting the CAO's appointment authority to administrative employees. Va. Code Ann. § 58.1-3271 is the specific *"law"* that authorizes

Council to appoint the City Assessor. The "except as otherwise specifically provided by *law*" language in Charter § 5.02 is thereby a legislative statement that the "law," § 58.1-3271, controls the appointment of the City Assessor.

This Court declares that Council has the exclusive power, pursuant to Va. Code Ann. § 58.1-3271, to appoint and remove the City Assessor.

In sum, the City's Chief Administrator Office does not have the authority to appoint and remove the affected employees. The Plaintiff is entitled to summary judgment.