## CIRCUIT COURT OF AUGUSTA COUNTY

In re Petition for
the Removal of the
Augusta County Courthouse

February 25, 2015

Case No. CL15000152-00

By Judge Victor V. Ludwig

The Board of Supervisors of Augusta County (the Board) has filed a Petition for Issuance of a Writ of Election for Removal of the Augusta County Courthouse (the Petition) on behalf of the County asking that the Court:

> issue a writ of election be held, in accordance with § 15.2-1652 of the Code of Virginia, placing before the voters of Augusta County the following question.
> Shall the courthouse of Augusta County be removed to the Augusta County Government Center complex in Verona, Virginia, and shall the Board of Supervisors be permitted to spend $11,500,000.00 therefor?

Petition, p. 2.

Despite the fact that no party has filed a pleading opposing the Petition, it is nevertheless the Court's obligation to determine whether the writ which the County requests satisfies the requirements of the Code of Virginia. I would not be fulfilling my oath to uphold the laws of the Commonwealth were I to grant a petition which does not fully comply with the law, even though it is unopposed.

The starting point for determining what the Court must do to issue a writ to afford the County the relief it seeks is Va. Code Ann. § 15.2-1644(A), which provides, in relevant part:

> Whenever ... the governing body of any county by resolution duly adopted requests the circuit court for such county, for an election in such county on the question of the removal of the courthouse to one or more places specified in the petition or resolution, such court shall issue a writ of election in

accordance with Article 5 (§ 24.2-681 *et seq.*) of Chapter 6 of Title 24.2, which shall fix the day of holding such election. Such petition shall also state the amount to be appropriated by the board of supervisors for the purchase of land, unless the land is to be donated, and for the erection of necessary buildings and improvements at the new location.

*Id.* The statute requires that the Petition state "the amount to be appropriated by the board of directors ... for the erection of necessary buildings and improvements at the new location." It is necessary, therefore, to inquire whether the $11,500,000.00 cost for constructing the Circuit Court alone is an adequate disclosure of the costs. Stated otherwise, the Court must determine what buildings and improvements are necessary for (or mandated as a consequence of) the relocation of the Circuit Court.

At the outset, let me make it clear that I am not questioning the good faith of the Board of Supervisors in using the figure in the Petition. Indeed, I am neither questioning nor endorsing the suggested cost to build a courthouse for the Circuit Court because I have not carefully analyzed it or discussed it with those who can confirm its accuracy, nor have I seen plans for any contemplated construction. The matter which I address in this letter opinion is a broader inquiry, not assessing the adequacy of the cost disclosure, but focused on the preliminary issue of determining what must be covered by the costs.

As the County correctly noted, in *County of Greensville v. City of Emporia*, 245 Va. 143 (1993), the Virginia Supreme Court, having disposed of one issue not relevant to the instant inquiry, held:

> Additionally, we conclude that the term "court-house" as used in § 15.1-559 [now Code § 15.2-1644] means the permanent place for holding court, including the building, or the part thereof, appointed for the use and occupancy of the circuit court. See *Board of Supervisors v. Bacon*, 215 Va. 722, 724, 214 S.E.2d 137, 138 (1975); *Egerton v. City of Hopewell*, 193 Va. 493, 501, 69 S.E.2d 326, 331 (1952); *Couk v. Skeen*, 109 Va. 6, 11, 63 S.E. 11, 13 (1908) (in Virginia, the term "courthouse" is synonymous with "county seat"); *Ingles v. Straus*, 91 Va. 209, 214-22, 21 S.E. 490, 491-94 (1895) (using terms "courthouse" and "county seat" interchangeably). See also *Tullidge v. Board of Supervisors*, 239 Va. 611, 391 S.E.2d 288 (1990).

*Id.* at 151. The County's conclusion from that holding is that "it would appear that the Virginia Supreme Court sees the word courthouse, as found in § 15.2-1644, as meaning only the circuit court." The better (and literal) reading of the Court's holding is that the term "court-house" means, not

just the Circuit Court, but "the permanent place for holding court," which certainly would include, but not be limited to, the "building ... appointed for the use and occupancy of the circuit court."

I note that the court facility at issue in *County of Greensville* housed the Circuit Court and the county's District Courts, and the county's proposal was to remove all three courts from the City of Emporia. Hence, the issue of the location of the District Courts was never raised.

The current structure of the judiciary in the Commonwealth which the General Assembly has fashioned now includes District Courts, and they, like the Circuit Court, are also charged with "holding court." Accordingly, they, too, must have a permanent place for that purpose. In light of the fact that there are courts in addition to the Circuit Court, this Court's interpretation of the Virginia Supreme Court's holding in *County of Greensville* is supported by the language in the statute which requires that the petition for the writ "state the amount to be appropriated ... for the erection of necessary buildings and improvements at the new location." The use of plural nouns certainly contemplates that more than one building might be necessary and that is a further indication that the General Assembly recognized that "the removal of the courthouse" (as the "permanent place for holding court") likely would involve more than just a single building for the Circuit Court because there are other courts to be considered.

As the quotation above states, the Court in *County of Greensville* noted with approval that "courthouse is synonymous with county seat." Currently, the Circuit Court of Augusta County sits in Staunton, so Staunton is the County Seat of Augusta County. The County currently utilizes two separate buildings in Staunton for holding court. One building, 6 East Johnson Street, houses the General District Court and Juvenile and Domestic Relations District Court (which is shared with the City of Staunton), while another building, 1 East Johnson Street, is the historic courthouse standing on the plot of land which has been the location of the County's courthouse since 1745.

There is no doubt that the District Courts of Augusta County can sit in the independent City of Staunton because, by definition, Staunton (the site of the Circuit Court of Augusta County) is the County Seat. Moreover, there is no doubt that the courthouse for the Circuit Court can be moved to any location in the County (which would then become the County Seat) by a referendum of the county voters. The question, however, is, if the Circuit Court is relocated from Staunton (so that Staunton is no longer the County Seat), can the County's District Courts continue to sit in the independent City of Staunton (which, by definition, is outside of the County) or in any other location other than the County Seat.

Initially, I thought the issue had constitutional ramifications. The Sixth Amendment of the United States Constitution provides in part:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, *by an impartial jury of the State and district wherein the crime shall have been committed,* which district shall have been previously ascertained by law… .

U.S. Constitution, VI Amendment (emphasis added).

The Sixth Amendment was made to apply to the Commonwealth by the Fourteenth Amendment, but the right which it protects is one that was recognized in the Commonwealth before the birth of the United States and well before the adoption of the Sixth or the Fourteenth Amendments to the United States Constitution. "That in all capital or criminal prosecutions a man has a right to demand … a speedy trial by an impartial jury of twelve men of his vicinage, without whose unanimous consent he cannot be found guilty… ." Virginia Declaration of Rights, Art. I, § 8 [1776], adopted on May 15, 1776. "It is well-established that the Sixth Amendment, like the common law, reserves this jury trial right for prosecutions of serious offenses, and that there is a category of petty crimes or offenses which is not subject to the Sixth Amendment jury trial provision." *Lewis v. United States,* 518 U.S. 322, 325 (1996) (internal quotations and citation omitted). This language leaves to the States the decision of how to define districts.

The Constitution of the Commonwealth currently provides in relevant part:

> That in criminal prosecutions a man hath a right to demand the cause and nature of his accusation, … and he shall enjoy the right to a speedy and public trial, by an impartial jury of his vicinage… .
>
> *Laws may be enacted providing for the trial of offenses not felonious by a court not of record without a jury, preserving the right of the accused to an appeal to and a trial by jury in some court of record having original criminal jurisdiction… .*

Virginia Constitution, Article I, § 8 (emphasis added). The Commonwealth has elected to define districts with the term vicinage, a term which, as used in this constitutional provision, "corresponds with the territorial jurisdiction of the court in which the venue of the crime is laid." *Karnes v. Commonwealth,* 125 Va. 758, 762 (1919).

First, it is clear that both the Sixth Amendment and Article I, § 8, of the Commonwealth's Constitution guarantee a right to a trial by jury in the designated district (or vicinage), the purpose of which is to ensure that the jury selected to hear the case is from the territorial jurisdiction of the trial court which would most likely afford the defendant a jury of his peers. Second, the second paragraph of Article I, § 8, makes it clear that crimes which are not felonies can be tried without juries (as they are in District Courts). Finally, given the legal fiction approved by Va. Code

Ann. § 16.1-69.36 (described below), those trials can occur in a court not physically located in the defendant's vicinage. That is permissible because the constitutional guarantee of a trial by jury in the defendant's vicinage is preserved by the automatic right of appeal to the Circuit Court for a jury trial.

Va. Code Ann. § 19.2-244 mandates that "[e]xcept as otherwise provided by law, the prosecution of a criminal case shall be had in the county or city in which the offense was committed." One exception (the only one which I have found) is in Va. Code Ann. § 16.1-69.36 which states:

> *All process, civil and criminal,* returnable before a district court of a county shall, if the defendants or any of them reside in a city or town in which the court is held, be made returnable at the courtroom or place the court is held in such city or town, but if none of the defendants reside therein it shall be made returnable to the county seat, *or to one of the other places where the court is held,* whichever shall be nearer or more accessible to such defendant or defendants. If the process is made returnable to some other place than the county seat the place to which it is returnable shall be designated therein. *For all jurisdictional requirements hereunder the county seat· and each and all of the places designated for the holding of the court shall be deemed to be a part of each and every magisterial district in the county.*

(Emphasis added.) The statute contemplates (a) that District Courts may be located somewhere other than the County Seat, (b) that a place designated for holding court (even if it is not in the County Seat[1]) shall, for jurisdictional purposes, be a part of each and every magisterial district of the county, and (c) that this applies not just to civil but also to criminal matters. One might argue that this statute cures any jurisdictional concerns should the County Seat be transferred to Verona even though the District Courts remain inside the territorial jurisdiction of the City of Staunton. However, the statute also clearly implies that there must be a District Court in the County Seat.

The implication is supported by the General Assembly's choice of language in Va. Code Ann. § 16.1-69.35. "[The chief judge] shall determine whether, in the case of district courts in counties, court shall be held at any place or places *in addition to the county seat.*" Va. Code Ann. § 16.1-69.35(5) (emphasis added). That language was the basis for the conclusion by the Attorney General that the District Courts must sit in the County Seat (wherever else they may sit). In 1973 Va. AG lexis 300,

---

[1] This reading seems to be supported by the language contained in Va. Code Ann. § 16.1-69.50, which refers to a "court of a county [holding court] in a city or town, other than the county seat."

the Attorney General answered the question "whether it is mandatory that the Carroll County General District Court and the Carroll County Juvenile and Domestic Relations District Court sit at the county seat." *Id*. at 4. The Attorney General opined:

> This question is now controlled by § 16.1-69.35(1)(C) which provides that the Chief District Judge "shall determine whether, in the case of district courts in counties, court shall be held at any place or places in addition to the county seat." That quoted language, as well as other language in § 16.1-69.35(1)(C), *makes it clear that the District Court of a county is to sit in the county seat*, but the Chief District Judge is given power to establish other places at which the Court may be held.

*Id*. at 4-5 (emphasis added). Although the ordering of that statute is different from what it is today, the language upon which the Attorney General relied is exactly the same as in the current law, and the General Assembly has not seen fit to change it. "The legislature is presumed to have had knowledge of the Attorney General's interpretation of the statutes, and its failure to make corrective amendments evinces legislative acquiescence in the Attorney General's view." *Browning-Ferris, Inc. v. Commonwealth*, 225 Va. 157, 161-62 (1983). It is reasonable to conclude that it is the intent of the General Assembly to require that District Courts hold court in the County Seat of the county they serve.

Constitutionally and statutorily, Augusta County may have District Courts located in the City of Staunton even if it is not the County Seat. However, by statute, a District Court must be located in the County Seat. This means that, should Augusta County transfer the County Seat to Verona, it must provide suitable quarters in Verona not only for the Circuit Court but for the District Courts as well.

Accordingly, I deny the petition currently pending before the Court, and I ask that Mr. Morgan prepare an order consistent with and incorporating this letter opinion. In addition, because of the County's acknowledgement that the current courthouse facilities are inadequate, the Court has not initiated any action pursuant to Va. Code § 15.2-1643(A). However, the Court has not been presented with plans or cost itemizations for the anticipated construction, and that is a matter we will need to address before a final estimated cost can be projected. In short, the Court (and, through the Court, other interested parties, such as the Clerk and the Sheriff) will need to be involved in the development of the plans for "the erection of necessary buildings and improvements at the new location" and the development of cost projections for the purpose.